17 U.S. 159 (____)
4 Wheat. 159
McCULLOCH
v.
STATE OF MARYLAND et al.
Supreme Court of United States.

*162 February 22d-27th, and March 1st-3d. Webster, for the plaintiff in error,[(a)].
*166 Hopkinson, for the defendants in error.
Jones, for the defendants in error.
Martin, Attorney-General of Maryland.
*180 *197 March 7th, 1819. MARSHALL, Ch. J., delivered the opinion of the court.
In the case now to be determined, the defendant, a sovereign state, denies the obligation of a law enacted by the legislature of the Union, and the plaintiff, on his part, contests the validity of an act which has been passed by the legislature of that state. The constitution of our country, in its most interesting and vital parts, is to be considered; the conflicting powers of the government of the Union and of its members, as marked in that constitution, are to be discussed; and an opinion given, which may essentially influence the great operations of the government. No tribunal can approach such a question without a deep sense of its importance, and of the awful responsibility involved in its decision. But it must be decided peacefully, or remain a source of *hostile legislation, perhaps, of hostility of [*401 a still more serious nature; and if it is to be so decided, by this tribunal alone can the decision be made. On the supreme court of the United States has the constitution of our country devolved this important duty.
The first question made in the cause is  has congress power to incorporate a bank? It has been truly said, that this can scarcely be considered as an open question, entirely unprejudiced by the former proceedings of the nation respecting it. The principle now contested was introduced at a very early period of our history, has been recognised by many successive legislatures, and has been acted upon by the judicial department, in cases of peculiar delicacy, as a law of undoubted obligation.
It will not be denied, that a bold and daring usurpation might be resisted, after an acquiescence still longer and more complete than this. But it is conceived, that a doubtful question, one on which human reason may pause, and the human judgment be suspended, in the decision of which the great principles of liberty are not concerned, but the respective powers of those who are equally the representatives of the people, are to be adjusted; if not put at rest by the practice of the government, ought to receive a considerable impression from that practice. An exposition of the constitution, deliberately established by legislative acts, on the faith of which an immense property has been advanced, ought not to be lightly disregarded.
The power now contested was exercised by the first congress elected under the present constitution. *The bill for incorporating the Bank [*402 of the United States did not steal upon an unsuspecting legislature, and pass unobserved. Its principle was completely understood, and was opposed with equal zeal and ability. After being resisted, first, in the fair and open field of debate, and afterwards, in the executive cabinet, with as much persevering talent as any measure has ever experienced, and being *198 supported by arguments which convinced minds as pure and as intelligent as this country can boast, it became a law. The original act was permitted to expire; but a short experience of the embarrassments to which the refusal to revive it exposed the government, convinced those who were most prejudiced against the measure of its necessity, and induced the passage of the present law. It would require no ordinary share of intrepidity, to assert that a measure adopted under these circumstances, was a bold and plain usurpation, to which the constitution gave no countenance. These observations belong to the cause; but they are not made under the impression, that, were the question entirely new, the law would be found irreconcilable with the constitution.
In discussing this question, the counsel for the state of Maryland have deemed it of some importance, in the construction of the constitution, to consider that instrument, not as emanating from the people, but as the act of sovereign and independent states. The powers of the general government, it has been said, are delegated by the states, who alone are truly sovereign; and must be exercised in subordination to the states, who alone *403] possess supreme dominion. *It would be difficult to sustain this proposition. The convention which framed the constitution was indeed elected by the state legislatures. But the instrument, when it came from their hands, was a mere proposal, without obligation, or pretensions to it. It was reported to the then existing congress of the United States, with a request that it might "be submitted to a convention of delegates, chosen in each state by the people thereof, under the recommendation of its legislature, for their assent and ratification." This mode of proceeding was adopted; and by the convention, by congress, and by the state legislatures, the instrument was submitted to the people. They acted upon it in the only manner in which they can act safely, effectively and wisely, on such a subject, by assembling in convention. It is true, they assembled in their several states  and where else should they have assembled? No political dreamer was ever wild enough to think of breaking down the lines which separate the states, and of compounding the American people into one common mass. Of consequence, when they act, they act in their states. But the measures they adopt do not, on that account, cease to be the measures of the people themselves, or become the measures of the state governments.
From these conventions, the constitution derives its whole authority. The government proceeds directly from the people; is "ordained and established," in the name of the people; and is declared to be ordained, "in order to form a more perfect union, establish justice, insure domestic *404] tranquillity, and secure *the blessings of liberty to themselves and to their posterity." The assent of the states, in their sovereign capacity, is implied, in calling a convention, and thus submitting that instrument to the people. But the people were at perfect liberty to accept, or reject it; and their act was final. It required not the affirmance, and could not be negatived, by the state governments. The constitution, when thus adopted, was of complete obligation, and bound the state sovereignties.
It has been said, that the people had already surrendered all their powers to the state sovereignties, and had nothing more to give. But, surely, the question whether they may resume and modify the powers granted to government, does not remain to be settled in this country. Much more might *199 the legitimacy of the general government be doubted, had it been created by the states. The powers delegated to the state sovereignties were to be exercised by themselves, not by a distinct and independent sovereignty, created by themselves. To the formation of a league, such as was the confederation, the state sovereignties were certainly competent. But when, "in order to form a more perfect union," it was deemed necessary to change this alliance into an effective government, possessing great and sovereign powers, and acting directly on the people, the necessity of referring it to the people, and of deriving its powers directly from them, was felt and acknowledged by all. The government of the Union, then (whatever may be the influence of this fact on the case), is, *emphatically and truly, [*405 a government of the people. In form, and in substance, it emanates from them. Its powers are granted by them and are to be exercised directly on them, and for their benefit.
This government is acknowledged by all, to be one of enumerated powers. The principle, that it can exercise only the powers granted to it, would seem too apparent, to have required to be enforced by all those arguments, which its enlightened friends, while it was depending before the people, found it necessary to urge; that principle is now universally admitted. But the question respecting the extent of the powers actually granted, is perpetually arising, and will probably continue to arise, so long as our system shall exist. In discussing these questions, the conflicting powers of the general and state governments must be brought into view, and the supremacy of their respective laws, when they are in opposition, must be settled.
If any one proposition could command the universal assent of mankind, we might expect it would be this  that the government of the Union, though limited in its powers, is supreme within its sphere of action. This would seem to result, necessarily, from its nature. It is the government of all; its powers are delegated by all; it represents all, and acts for all. Though any one state may be willing to control its operations, no state is willing to allow others to control them. The nation, on those subjects on which it can act, must necessarily bind its component parts. But this question is not left to mere reason: the people have, in express terms, decided it, by saying, *"this constitution, and the laws of the United States, [*406 which shall be made in pursuance thereof," "shall be the supreme law of the land," and by requiring that the members of the state legislatures, and the officers of the executive and judicial departments of the states, shall take the oath of fidelity to it. The government of the United States, then, though limited in its powers, is supreme; and its laws, when made in pursuance of the constitution, form the supreme law of the land, "anything in the constitution or laws of any state to the contrary notwithstanding."
Among the enumerated powers, we do not find that of establishing a bank or creating a corporation. But there is no phrase in the instrument which, like the articles of confederation, excludes incidental or implied powers; and which requires that everything granted shall be expressly and minutely described. Even the 10th amendment, which was framed for the purpose of quieting the excessive jealousies which had been excited, omits the word "expressly," and declares only, that the powers "not delegated to the United States, nor prohibited to the states, are reserved to the states or to the people;" thus, leaving the question, whether the particular power *200 which may become the subject of contest, has been delegated to the one government, or prohibited to the other, to depend on a fair construction of the whole instrument. The men who drew and adopted this amendment had experienced the embarrassments resulting from the insertion of this *407] word in the articles *of confederation, and probably omitted it, to avoid those embarrassments. A constitution, to contain an accurate detail of all the subdivisions of which its great powers will admit, and of all the means by which they may be carried into execution, would partake of the prolixity of a legal code, and could scarcely be embraced by the human mind. It would, probably, never be understood by the public. Its nature, therefore, requires, that only its great outlines should be marked, its important objects designated, and the minor ingredients which compose those objects, be deduced from the nature of the objects themselves. That this idea was entertained by the framers of the American constitution, is not only to be inferred from the nature of the instrument, but from the language. Why else were some of the limitations, found in the 9th section of the 1st article, introduced? It is also, in some degree, warranted, by their having omitted to use any restrictive term which might prevent its receiving a fair and just interpretation. In considering this question, then, we must never forget that it is a constitution we are expounding.
Although, among the enumerated powers of government, we do not find the word "bank" or "incorporation," we find the great powers, to lay and collect taxes; to borrow money; to regulate commerce; to declare and conduct a war; and to raise and support armies and navies. The sword and the purse, all the external relations, and no inconsiderable portion of the industry of the nation, are intrusted to its government. It can never be pretended, *408] *that these vast powers draw after them others of inferior importance, merely because they are inferior. Such an idea can never be advanced. But it may with great reason be contended, that a government, intrusted with such ample powers, on the due execution of which the happiness and prosperity of the nation so vitally depends, must also be intrusted with ample means for their execution. The power being given, it is the interest of the nation to facilitate its execution. It can never be their interest, and cannot be presumed to have been their intention, to clog and embarrass its execution, by withholding the most appropriate means. Throughout this vast republic, from the St. Croix to the Gulf of Mexico, from the Atlantic to the Pacific, revenue is to be collected and expended, armies are to be marched and supported. The exigencies of the nation may require, that the treasure raised in the north should be transported to the south, that raised in the east, conveyed to the west, or that this order should be reversed. Is that construction of the constitution to be preferred, which would render these operations difficult, hazardous and expensive? Can we adopt that construction (unless the words imperiously require it), which would impute to the framers of that instrument, when granting these powers for the public good, the intention of impeding their exercise, by withholding a choice of means? If, indeed, such be the mandate of the constitution, we have only to obey; but that instrument does not profess to enumerate the means by which the powers it confers may be executed; nor does it *409] prohibit the creation of a corporation, *if the existence of such a *201 being be essential, to the beneficial exercise of those powers. It is, then, the subject of fair inquiry, how far such means may be employed.
It is not denied, that the powers given to the government imply the ordinary means of execution. That, for example, of raising revenue, and applying it to national purposes, is admitted to imply the power of conveying money from place to place, as the exigencies of the nation may require, and of employing the usual means of conveyance. But it is denied, that the government has its choice of means; or, that it may employ the most convenient means, if, to employ them, it be necessary to erect a corporation. On what foundation does this argument rest? On this alone: the power of creating a corporation, is one appertaining to sovereignty, and is not expressly conferred on congress. This is true. But all legislative powers appertain to sovereignty. The original power of giving the law on any subject whatever, is a sovereign power; and if the government of the Union is restrained from creating a corporation, as a means for performing its functions, on the single reason that the creation of a corporation is an act of sovereignty; if the sufficiency of this reason be acknowledged, there would be some difficulty in sustaining the authority of congress to pass other laws for the accomplishment of the same objects. The government which has a right to do an act, and has imposed on it, the duty of performing that act, must, according to the dictates of reason, be allowed *to select the [*410 means; and those who contend that it may not select any appropriate means, that one particular mode of effecting the object is excepted, take upon themselves the burden of establishing that exception.
The creation of a corporation, it is said, appertains to sovereignty. This is admitted. But to what portion of sovereignty does it appertain? Does it belong to one more than to another? In America, the powers of sovereignty are divided between the government of the Union, and those of the states. They are each sovereign, with respect to the objects committed to it, and neither sovereign, with respect to the objects committed to the other. We cannot comprehend that train of reasoning, which would maintain, that the extent of power granted by the people is to be ascertained, not by the nature and terms of the grant, but by its date. Some state constitutions were formed before, some since that of the United States. We cannot believe, that their relation to each other is in any degree dependent upon this circumstance. Their respective powers must, we think, be precisely the same, as if they had been formed at the same time. Had they been formed at the same time, and had the people conferred on the general government the power contained in the constitution, and on the states the whole residuum of power, would it have been asserted, that the government of the Union was not sovereign, with respect to those objects which were intrusted to it, in relation to which its laws were declared to be supreme? If this could not have been asserted, we cannot well comprehend the process of reasoning *which maintains, that a power appertaining to sovereignty [*411 cannot be connected with that vast portion of it which is granted to the general government, so far as it is calculated to subserve the legitimate objects of that government. The power of creating a corporation, though appertaining to sovereignty, is not, like the power of making war, or levying taxes, or of regulating commerce, a great substantive and independent power, which cannot be implied as incidental to other powers, or *202 used as a means of executing them. It is never the end for which other powers are exercised, but a means by which other objects are accomplished. No contributions are made to charity, for the sake of an incorporation, but a corporation is created to administer the charity; no seminary of learning is instituted, in order to be incorporated, but the corporate character is conferred to subserve the purposes of education. No city was ever built, with the sole object of being incorporated, but is incorporated as affording the best means of being well governed. The power of creating a corporation is never used for its own sake, but for the purpose of effecting something else. No sufficient reason is, therefore, perceived, why it may not pass as incidental to those powers which are expressly given, if it be a direct mode of executing them.
But the constitution of the United States has not left the right of congress to employ the necessary means, for the execution of the powers conferred on the government, to general reasoning. To its enumeration of *412] powers is added, that of making "all *laws which shall be necessary and proper, for carrying into execution the foregoing powers, and all other powers vested by this constitution, in the government of the United States, or in any department thereof." The counsel for the state of Maryland have urged various arguments, to prove that this clause, though, in terms, a grant of power, is not so, in effect; but is really restrictive of the general right, which might otherwise be implied, of selecting means for executing the enumerated powers. In support of this proposition, they have found it necessary to contend, that this clause was inserted for the purpose of conferring on congress the power of making laws. That, without it, doubts might be entertained, whether congress could exercise its powers in the form of legislation.
But could this be the object for which it was inserted? A government is created by the people, having legislative, executive and judicial powers. Its legislative powers are vested in a congress, which is to consist of a senate and house of representatives. Each house may determine the rule of its proceedings; and it is declared, that every bill which shall have passed both houses, shall, before it becomes a law, be presented to the president of the United States. The 7th section describes the course of proceedings, by which a bill shall become a law; and, then, the 8th section enumerates the powers of congress. Could it be necessary to say, that a legislature should exercise legislative powers, in the shape of legislation? After allowing *413] each house to prescribe *its own course of proceeding, after describing the manner in which a bill should become a law, would it have entered into the mind of a single member of the convention, that an express power to make laws was necessary, to enable the legislature to make them? That a legislature, endowed with legislative powers, can legislate, is a proposition too self-evident to have been questioned.
But the argument on which most reliance is placed, is drawn from that peculiar language of this clause. Congress is not empowered by it to make all laws, which may have relation to the powers conferred on the government, but such only as may be "necessary and proper" for carrying them into execution. The word "necessary" is considered as controlling the whole sentence, and as limiting the right to pass laws for the execution of the granted powers, to such as are indispensable, and without which the power *203 would be nugatory. That it excludes the choice of means, and leaves to congress, in each case, that only which is most direct and simple.
Is it true, that this is the sense in which the word "necessary" is always used? Does it always import an absolute physical necessity, so strong, that one thing to which another may be termed necessary, cannot exist without that other? We think it does not. If reference be had to its use, in the common affairs of the world, or in approved authors, we find that it frequently imports no more than that one thing is convenient, or useful, or essential to another. To employ the means necessary to an end, is generally understood as employing any means calculated to *produce [*414 the end, and not as being confined to those single means, without which the end would be entirely unattainable. Such is the character of human language, that no word conveys to the mind, in all situations, one single definite idea; and nothing is more common than to use words in a figurative sense. Almost all compositions contain words, which, taken in a their rigorous sense, would convey a meaning different from that which is obviously intended. It is essential to just construction, that many words which import something excessive, should be understood in a more mitigated sense  in that sense which common usage justifies. The word "necessary" is of this description. It has not a fixed character, peculiar to itself. It admits of all degrees of comparison; and is often connected with other words, which increase or diminish the impression the mind receives of the urgency it imports. A thing may be necessary, very necessary, absolutely or indispensably necessary. To no mind would the same idea be conveyed by these several phrases. The comment on the word is well illustrated by the passage cited at the bar, from the 10th section of the 1st article of the constitution. It is, we think, impossible to compare the sentence which prohibits a state from laying "imposts, or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws," with that which authorizes congress "to make all laws which shall be necessary and proper for carrying into execution" the powers of the general government, without feeling a conviction, that the convention understood itself to change materially *the meaning of the word "necessary," by prefixing [*415 the word "absolutely." This word, then, like others, is used in various senses; and, in its construction, the subject, the context, the intention of the person using them, are all to be taken into view.
Let this be done in the case under consideration. The subject is the execution of those great powers on which the welfare of a nation essentially depends. It must have been the intention of those who gave these powers, to insure, so far as human prudence could insure, their beneficial execution. This could not be done, by confiding the choice of means to such narrow limits as not to leave it in the power of congress to adopt any which might be appropriate, and which were conducive to the end. This provision is made in a constitution, intended to endure for ages to come, and consequently, to be adapted to the various crises of human affairs. To have prescribed the means by which government should, in all future time, execute its powers, would have been to change, entirely, the character of the instrument, and give it the properties of a legal code. It would have been an unwise attempt to provide, by immutable rules, for exigencies which, if foreseen at all, must have been seen dimly, and which can be best provided *204 for as they occur. To have declared, that the best means shall not be used, but those alone, without which the power given would be nugatory, would have been to deprive the legislature of the capacity to avail itself of experience, to exercise its reason, and to accommodate its legislation to circumstances. *416] *If we apply this principle of construction to any of the powers of the government, we shall find it so pernicious in its operation that we shall be compelled to discard it. The powers vested in congress may certainly be carried into execution, without prescribing an oath of office. The power to exact this security for the faithful performance of duty, is not given, nor is it indispensably necessary. The different departments may be established; taxes may be imposed and collected; armies and navies may be raised and maintained; and money may be borrowed, without requiring an oath of office. It might be argued, with as much plausibility as other incidental powers have been assailed, that the convention was not unmindful of this subject. The oath which might be exacted  that of fidelity to the constitution  is prescribed, and no other can be required. Yet, he would be charged with insanity, who should contend, that the legislature might not superadd, to the oath directed by the constitution, such other oath of office as its wisdom might suggest.
So, with respect to the whole penal code of the United States: whence arises the power to punish, in cases not prescribed by the constitution? All admit, that the government may, legitimately, punish any violation of its laws; and yet, this is not among the enumerated powers of congress. The right to enforce the observance of law, by punishing its infraction, might be denied, with the more plausibility, because it is expressly given in some cases. *417] Congress is empowered "to provide for the punishment *of counterfeiting the securities and current coin of the United States," and "to define and punish piracies and felonies committed on the high seas, and offences against the law of nations." The several powers of congress may exist, in a very imperfect state, to be sure, but they may exist and be carried into execution, although no punishment should be inflicted, in cases where the right to punish is not expressly given.
Take, for example, the power "to establish post-offices and post-roads." This power is executed, by the single act of making the establishment. But, from this has been inferred the power and duty of carrying the mail along the post-road, from one post-office to another. And from this implied power, has again been inferred the right to punish those who steal letters from the post-office, or rob the mail. It may be said, with some plausibility, that the right to carry the mail, and to punish those who rob it, is not indispensably necessary to the establishment of a post-office and post-road. This right is indeed essential to the beneficial exercise of the power, but not indispensably necessary to its existence. So, of the punishment of the crimes of stealing or falsifying a record or process of a court of the United States, or of perjury in such court. To punish these offences, is certainly conducive to the due administration of justice. But courts may exist, and may decide the causes brought before them, though such crimes escape punishment.
The baneful influence of this narrow construction on all the operations of *418] the government, and the absolute *impracticability of maintaining it, without rendering the government incompetent to its great objects, might be illustrated by numerous examples drawn from the constitution, and *205 from our laws. The good sense of the public has pronounced, without hesitation, that the power of punishment appertains to sovereignty, and may be exercised, whenever the sovereign has a right to act, as incidental to his constitutional powers. It is a means for carrying into execution all sovereign powers, and may be used, although not indispensably necessary. It is a right incidental to the power, and conducive to its beneficial exercise.
If this limited construction of the word "necessary" must be abandoned, in order to punish, whence is derived the rule which would reinstate it, when the government would carry its powers into execution, by means not vindictive in their nature? If the word "necessary" means "needful," "requisite," "essential," "conducive to," in order to let in the power of punishment for the infraction of law; why is it not equally comprehensive, when required to authorize the use of means which facilitate the execution of the powers of government, without the infliction of punishment?
In ascertaining the sense in which the word "necessary" is used in this clause of the constitution, we may derive some aid from that with which it it is associated. Congress shall have power "to make all laws which shall be necessary and proper to carry into execution" the powers of the government. If the word "necessary" was used in that strict and rigorous sense for which the counsel for the state of *Maryland contend, it would [*419 be an extraordinary departure from the usual course of the human mind, as exhibited in composition, to add a word, the only possible offect of which is, to qualify that strict and rigorous meaning; to present to the mind the idea of some choice of means of legislation, not strained and compressed within the narrow limits for which gentlemen contend.
But the argument which most conclusively demonstrates the error of the construction contended for by the counsel for the state of Maryland, is founded on the intention of the convention, as manifested in the whole clause. To waste time and argument in proving that, without it, congress might carry its powers into execution, would be not much less idle, than to hold a lighted taper to the sun. As little can it be required to prove, that in the absence of this clause, congress would have some choice of means. That it might employ those which, in its judgment, would most advantageously effect the object to be accomplished. That any means adapted to the end, any means which tended directly to the execution of the constitutional powers of the government, were in themselves constitutional. This clause, as construed by the state of Maryland, would abridge, and almost annihilate, this useful and necessary right of the legislature to select its means. That this could not be intended, is, we should think, had it not been already controverted, too apparent for controversy.
We think so for the following reasons: 1st. The clause is placed among the powers of congress, not among the limitations on those powers. *2d. Its terms purport to enlarge, not to diminish the powers vested [*420 in the government. It purports to be an additional power, not a restriction on those already granted. No reason has been, or can be assigned, for thus concealing an intention to narrow the discretion of the national legislature, under words which purport to enlarge it. The framers of the constitution wished its adoption, and well knew that it would be endangered by its strength, not by its weakness. Had they been capable of using language which would convey to the eye one idea, and, after deep reflection, impress *206 on the mind, another, they would rather have disguised the grant of power, than its limitation. If, then, their intention had been, by this clause, to restrain the free use of means which might otherwise have been implied, that intention would have been inserted in another place, and would have been expressed in terms resembling these. "In carrying into execution the foregoing powers, and all others," &c., "no laws shall be passed but such as are necessary and proper." Had the intention been to make this clause restrictive, it would unquestionably have been so in form as well as in effect.
The result of the most careful and attentive consideration bestowed upon this clause is, that if it does not enlarge, it cannot be construed to restrain the powers of congress, or to impair the right of the legislature to exercise its best judgment in the selection of measures to carry into execution the constitutional powers of the government. If no other motive for its insertion can be suggested, a sufficient one is found in the desire to *421] remove all doubts respecting *the right to legislate on that vast mass of incidental powers which must be involved in the constitution, if that instrument be not a splendid bauble.
We admit, as all must admit, that the powers of the government are limited, and that its limits are not to be transcended, But we think the sound construction of the constitution must allow to the national legislature that discretion, with respect to the means by which the powers it confers are to be carried into execution, which will enable that body to perform the high duties assigned to it, in the manner most beneficial to the people. Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional.[1]
That a corporation must be considered as a means not less usual, not of higher dignity, not more requiring a particular specification than other means, has been sufficiently proved. If we look to the origin of corporations, to the manner in which they have been framed in that government from which we have derived most of our legal principles and ideas, or to the uses to which they have been applied, we find no reason to suppose, that a constitution, omitting, and wisely omitting, to enumerate all the means for carrying into execution the great powers vested in government, ought to have specified this. Had it been intended to grant this power, as one which should be distinct and independent, to be exercised in any case whatever, it *422] *would have found a place among the enumerated powers of the government. But being considered merely as a means, to be employed only for the purpose of carrying into execution the given powers, there could be no motive for particularly mentioning it.
The propriety of this remark would seem to be generally acknowledged, by the universal acquiescence in the construction which has been uniformly put on the 3d section of the 4th article of the constitution. The power to "make all needful rules and regulations respecting the territory or other property belonging to the United States," is not more comprehensive, than the power "to make all laws which shall be necessary and proper for carrying *207 into execution" the powers of the government. Yet all admit the constitutionality of a territorial government, which is a corporate body.
If a corporation may be employed, indiscriminately with other means, to carry into execution the powers of the government, no particular reason can be assigned for excluding the use of a bank, if required for its fiscal operations. To use one, must be within the discretion of congress, if it be an appropriate mode of executing the powers of government. That it is a convenient, a useful, and essential instrument in the prosecution of its fiscal operations, is not now a subject of controversy. All those who have been concerned in the administration of our finances, have concurred in representing its importance and necessity; and so strongly have they been felt, that statesmen of the first class, whose previous opinions *against it had [*423 been confirmed by every circumstance which can fix the human judgment, have yielded those opinions to the exigencies of the nation. Under the confederation, congress, justifying the measure by its necessity, transcended, perhaps, its powers, to obtain the advantage of a bank; and our own legislation attests the universal conviction of the utility of this measure. The time has passed away, when it can be necessary to enter into any discussion, in order to prove the importance of this instrument, as a means to effect the legitimate objects of the government.
But were its necessity less apparent, none can deny its being an appropriate measure; and if it is, the decree of its necessity, as has been very justly observed, is to be discussed in another place. Should congress, in the execution of its powers, adopt measures which are prohibited by the constitution; or should congress, under the pretext of executing its powers, pass laws for the accomplishment of objects not intrusted to the government; it would become the painful duty of this tribunal, should a case requiring such a decision come before it, to say, that such an act was not the law of the land. But where the law is not prohibited, and is really calculated to effect any of the objects intrusted to the government, to undertake here to inquire into the decree of its necessity, would be to pass the line which circumscribes the judicial department, and to tread on legislative ground. This court disclaims all pretensions to such a power.
*After this declaration, it can scarcely be necessary to say, that [*424 the existence of state banks can have no possible influence on the question. No trace is to be found in the constitution, of an intention to create a dependence of the government of the Union on those of the states, for the execution of the great powers assigned to it. Its means are adequate to its ends; and on those means alone was it expected to rely for the accomplishment of its ends. To impose on it the necessity of resorting to means which it cannot control, which another government may furnish or withhold, would render its course precarious, the result of its measures uncertain, and create a dependence on other governments, which might disappoint its most important designs, and is incompatible with the language of the constitution. But were it otherwise, the choice of means implies a right to choose a national bank in preference to state banks, and congress alone can make the election.
After the most deliberate consideration, it is the unanimous and decided opinion of this court, that the act to incorporate the Bank of the United States is a law made in pursuance of the constitution, and is a part of the supreme law of the land.
*208 The branches, proceeding from the same stock, and being conducive to the complete accomplishment of the object, are equally constitutional. It would have been unwise, to locate them in the charter, and it would be unnecessarily inconvenient, to employ the legislative power in making those subordinate arrangements. The great duties of the bank are prescribed; *425] those duties require branches; and the bank itself *may, we think, be safely trusted with the selection of places where those branches shall be fixed; reserving always to the government the right to require that a branch shall be located where it may be deemed necessary.
It being the opinion of the court, that the act incorporating the bank is constitutional; and that the power of establishing a branch in the state of Maryland might be properly exercised by the bank itself, we proceed to inquire 
2. Whether the state of Maryland may, without violating the constitution, tax that branch? That the power of taxation is one of vital importance; that it is retained by the states; that it is not abridged by the grant of a similar power to the government of the Union; that it is to be concurrently exercised by the two governments  are truths which have never been denied. But such is the paramount character of the constitution, that its capacity to withdraw any subject from the action of even this power, is admitted. The states are expressly forbidden to lay any duties on imports or exports, except what may be absolutely necessary for executing their inspection laws. If the obligation of this prohibition must be conceded  if it may restrain a state from the exercise of its taxing power on imports and exports  the same paramount character would seem to restrain, as it certainly may restrain, a state from such other exercise of this power, as is in its nature incompatible with, and repugnant to, the constitutional laws of *426] the Union. A law, absolutely repugnant to another, as entirely *repeals that other as if express terms of repeal were used.
On this ground, the counsel for the bank place its claim to be exempted from the power of a state to tax its operations. There is no express provision for the case, but the claim has been sustained on a principle which so entirely pervades the constitution, is so intermixed with the materials which compose it, so interwoven with its web, so blended with its texture, as to be incapable of being separated from it, without rending it into shreds. This great principle is, that the constitution and the laws made in pursuance thereof are supreme; that they control the constitution and laws of the respective states, and cannot be controlled by them. From this, which may be almost termed an axiom, other propositions are deduced as corollaries, on the truth or error of which, and on their application to this case, the cause has been supposed to depend. These are, 1st. That a power to create implies a power to preserve: 2d. That a power to destroy, if wielded by a different hand, is hostile to, and incompatible with these powers to create and to preserve: 3d. That where this repugnancy exists, that authority which is supreme must control, not yield to that over which it is supreme.
These propositions, as abstract truths, would, perhaps, never be controverted. Their application to this case, however, has been denied; and both in maintaining the affirmative and the negative, a splendor of eloquence, and strength of argument, seldom, if ever, surpassed, have been displayed.
*209 *427] *The power of congress to create, and of course, to continue, the bank, was the subject of the preceding part of this opinion; and is no longer to be considered as questionable. That the power of taxing it by the states may be exercised so as to destroy it, is too obvious to be denied. But taxation is said to be an absolute power, which acknowledges no other limits than those expressly prescribed in the constitution and like sovereign power of every other description, is intrusted to the discretion of those who use it. But the very terms of this argument admit, that the sovereignty of the state, in the article of taxation itself, is subordinate to, and may be controlled by the constitution of the United States. How far it has been controlled by that instrument, must be a question of construction. In making this construction, no principle, not declared, can be admissible, which would defeat the legitimate operations of a supreme government. It is of the very essence of supremacy, to remove all obstacles to its action within its own sphere, and so to modify every power vested in subordinate governments, as to exempt its own operations from their own influence. This effect need not be stated in terms. It is so involved in the declaration of supremacy, so necessarily implied in it, that the expression of it could not make it more certain. We must, therefore, keep it in view, while construing the constitution.
The argument on the part of the state of Maryland, is, not that the states may directly resist a law of congress, but that they may exercise their *acknowledged powers upon it, and that the constitution leaves them, [*428 this right, in the confidence that they will not abuse it. Before we proceed to examine this argument, and to subject it to test of the constitution, we must be permitted to bestow a few considerations on the nature and extent of this original right of taxation, which is acknowledged to remain with the states. It is admitted, that the power of taxing the people and their property, is essential to the very existence of government, and may be legitimately exercised on the objects to which it is applicable, to the utmost extent to which the government may choose to carry it. The only security against the abuse of this power, is found, in the structure of the government itself. In imposing a tax, the legislature acts upon its constituents. This is, in general, a sufficient security against erroneous and oppressive taxation.
The people of a state, therefore, give to their government a right of taxing themselves and their property, and as the exigencies of government cannot be limited, they prescribe no limits to the exercise of this right, resting confidently on the interest of the legislator, and on the influence of the constituent over their representative, to guard them against its abuse. But the means employed by the government of the Union have no such security, nor is the right of a state to tax them sustained by the same theory. Those means are not given by the people of a particular state, not given by the constituents of the legislature, which claim the right to tax them, but by the people of all the states. They are given by all, *for the benefit [*429 of all  and upon theory, should be subjected to that government only which belongs to all.
It may be objected to this definition, that the power of taxation is not confined to the people and property of a state. It may be exercised upon every object brought within its jurisdiction. This is true, But to what *210 source do wo trace this right? It is obvious, that it is an incident of sovereignty, and is co-extensive with that to which it is an incident. All subjects over which the sovereign power of a state extends, are objects of taxation; but those over which it does not extend, are, upon the soundest principles, exempt from taxation. This proposition may almost be pronounced self-evident.
The sovereignty of a state extends to everything which exists by its own authority, or is introduced by its permission; but does it extend to those means which are employed by congress to carry into execution powers conferred on that body by the people of the United States? We think it demonstrable, that it does not. Those powers are not given by the people of a single state. They are given by the people of the United States, to a government whose laws, made in pursuance of the constitution, are declared to be supreme. Consequently, the people of a single state cannot confer a sovereignty which will extend over them.
If we measure the power of taxation residing in a state, by the extent of sovereignty which the people of a single state possess, and can confer on *430] its government, we have an intelligible standard, applicable *to every case to which the power may be applied. We have a principle which leaves the power of taxing the people and property of a state unimpaired; which leaves to a state the command of all its resources, and which places beyond its reach, all those powers which are conferred by the people of the United States on the government of the Union, and all those means which are given for the purpose of carrying those powers into execution. We have a principle which is safe for the states, and safe for the Union. We are relieved, as we ought to be, from clashing sovereignty; from interfering powers; from a repugnancy between a right in one government to pull down, what there is an acknowledged right in another to build up; from the incompatibility of a right in one government to destroy, what there is a right in another to preserve. We are not driven to the perplexing inquiry, so unfit for the judicial department, what degree of taxation is the legitimate use, and what degree may amount to the abuse of the power. The attempt to use it on the means employed by the government of the Union, in pursuance of the constitution, is itself an abuse, because it is the usurpation of a power which the people of a single state cannot give. We find, then, on just theory, a total failure of this original right to tax the means employed by the government of the Union, for the execution of its powers. The right never existed, and the question whether it has been surrendered, cannot arise.
But, waiving this theory for the present, let us resume the inquiry, *431] whether this power can be exercised *by the respective states, consistently with a fair construction of the constitution? That the power to tax involves the power to destroy; that the power to destroy may defeat and render useless the power to create; that there is a plain repugnance in conferring on one government a power to control the constitutional measures of another, which other, with respect to those very measures, is declared to be supreme over that which exerts the control, are propositions not to be denied. But all inconsistencies are to be reconciled by the magic of the word confidence. Taxation, it is said, does not necessarily and unavoidably destroy. To carry it to the excess of destruction, would be an *211 abuse, to presume which, would banish that confidence which is essential to all government. But is this a case of confidence? Would the people of any one state trust those of another with a power to control the most insignificant operations of their state government? We know they would not. Why, then, should we suppose, that the people of any one state should be willing to trust those of another with a power to control the operations of a government to which they have confided their most important and most valuable interests? In the legislature of the Union alone, are all represented. The legislature of the Union alone, therefore, can be trusted by the people with the power of controlling measures which concern all, in the confidence that it will not be abused. This, then, is not a case of confidence, and we must consider it is as it really is.
*If we apply the principle for which the state of Maryland contends, [*432 to the constitution, generally, we shall find it capable of changing totally the character of that instrument. We shall find it capable of arresting all the measures of the government, and of prostrating it at the foot of the states. The American people have declared their constitution and the laws made in pursuance thereof, to be supreme; but this principle would transfer the supremacy, in fact, to the states. If the states may tax one instrument, employed by the government in the execution of its powers, they may tax any and every other instrument. They may tax the mail; they may tax the mint; they may tax patent-rights; they may tax the papers of the custom-house; they may tax judicial process; they may tax all the means employed by the government, to an excess which would defeat all the ends of government. This was not intended by the American people. They did not design to make their government dependent on the states.
Gentlemen say, they do not claim the right to extend state taxation to these objects. They limit their pretensions to property. But on what principle, is this distinction made? Those who make it have furnished no reason for it, and the principle for which they contend denies it. They contend, that the power of taxation has no other limit than is found in the 10th section of the 1st article of the constitution; that, with respect to everything else, the power of the states is supreme, and admits of no control. If this be true, the distinction between property and *other subjects [*433 to which the power of taxation is applicable, is merely arbitrary, and can never be sustained. This is not all. If the controlling power of the states be established; if their supremacy as to taxation be acknowledged; what is to restrain their exercising control in any shape they may please to give it? Their sovereignty is not confined to taxation; that is not the only mode in which it might be displayed. The question is, in truth, a question of supremacy; and if the right of the states to tax the means employed by the general government be conceded, the declaration that the constitution, and the laws made in pursuance thereof, shall be the supreme law of the land, is empty and unmeaning declamation.
In the course of the argument, the Federalist has been quoted; and the opinions expressed by the authors of that work have been justly supposed to be entitled to great respect in expounding the constitution. No tribute can be paid to them which exceeds their merit; but in applying their opinions to the cases which may arise in the progress of our government, a right to *212 judge of their correctness must be retained; and to understand the argument, we must examine the proposition it maintains, and the objections against which it is directed. The subject of those numbers, from which passages have been cited, is the unlimited power of taxation which is vested in the general government. The objection to this unlimited power, which the argument seeks to remove, is stated with fulness and clearness. It is, "that an indefinite power of taxation in the latter (the government *434] *of the Union) might, and probably would, in time, deprive the former (the government of the states) of the means of providing for their own necessities; and would subject them entirely to the mercy of the national legislature. As the laws of the Union are to become the supreme law of the land; as it is to have power to pass all laws that may necessary for carrying into execution the authorities with which it is proposed to vest it; the national government might, at any time, abolish the taxes imposed for state objects, upon the pretence of an interference with its own. It might allege a necessity for doing this, in order to give efficacy to the national revenues; and thus, all the resources of taxation might, by degrees, become the subjects of federal monopoly, to the entire exclusion and destruction of the state governments."
The objections to the constitution which are noticed in these numbers, were to the undefined power of the government to tax, not to the incidental privilege of exempting its own measures from state taxation. The consequences apprehended from this undefined power were, that it would absorb all the objects of taxation, "to the exclusion and destruction of the state governments." The arguments of the Federalist are intended to prove the fallacy of these apprehensions; not to prove that the government was incapable of executing any of its powers, without exposing the means it employed to the embarrassments of state taxation. Arguments urged against these objections, and these apprehensions, are to be understood as relating to the points *435] they *mean to prove. Had the authors of those excellent essays been asked, whether they contended for that construction of the constitution, which would place within the reach of the states those measures which the government might adopt for the execution of its powers; no man, who has read their instructive pages, will hesitate to admit, that their answer must have been in the negative.
It has also been insisted, that, as the power of taxation in the general and state governments is acknowledged to be concurrent, every argument which would sustain the right of the general government to tax banks chartered by the states, will equally sustain the right of the states to tax banks chartered by the general government. But the two cases are not on the same reason. The people of all the states have created the general government, and have conferred upon it the general power of taxation. The people of all the states, and the states themselves, are represented in congress, and, by their representatives, exercise this power. When they tax the chartered institutions of the states, they tax their constituents; and these taxes must be uniform. But when a state taxes the operations of the government of the United States, it acts upon institutions created, not by their own constituents, but by people over whom they claim no control. It acts upon the measures of a government created by others as well as themselves, for the benefit of others in common with themselves. The difference is that *213 which always exists, and always must exist, between the action of the whole on a *part, and the action of a part on the whole  between the laws [*436 of a government declared to be supreme, and those of a government which, when in opposition to those laws, is not supreme.
But if the full application of this argument could be admitted, it night bring into question the right of congress to tax the state banks, and could not prove the rights of the states to tax the Bank of the United States.
The court has bestowed on this subject its most deliberate consideration. The result is a conviction that the states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the general government. This is, we think, the unavoidable consequence of that supremacy which the constitution has declared. We are unanimously of opinion, that the law passed by the legislature of Maryland, imposing a tax on the Bank of the United States, is unconstitutional and void.
This opinion does not deprive the states of any resources which they originally possessed. It does not extend to a tax paid by the real property of the bank, in common with the other real property within the state, nor to a tax imposed on the interest which the citizens of Maryland may hold in this institution, in common with other property of the same description throughout the state. But this is a tax on the operations of the bank, and is, consequently, a tax on the operation of an instrument employed by the government *of the Union to carry its powers into execution. Such [*437 a tax must be unconstitutional.
JUDGMENT.  This cause came on to be heard, on the transcript of the record of the court of appeals of the state of Maryland, and was argued by counsel: on consideration whereof, it is the opinion of this court, that the act of the legislature of Maryland is contrary to the constitution of the United States, and void; and therefore, that the said court of appeals of the state of Maryland erred, in affirming the judgment of the Baltimore county court, in which judgment was rendered against James W. McCulloch; but that the said court of appeals of Maryland ought to have reversed the said judgment of the said Baltimore county court, and ought to have given judgment for the said appellant, McCulloch: It is, therefore, adjudged and ordered, that the said judgment of the said court of appeals of the state of Maryland in this case, be, and the same hereby is, reversed and annulled. And this court, proceeding to render such judgment as the said court of appeals should have rendered; it is further adjudged and ordered, that the judgment of the said Baltimore county court be reversed and annulled, and that judgment be entered in the said Baltimore county court for the said James W. McCulloch.
NOTES
[1] This case involving a constitutional question of great public importance, and the sovereign rights of the United States and the state of Maryland; and the government of the United States having directed their attorney-general to appear for the plaintiff in error, the court dispensed with its general rule, permitting only two counsel to argue for each party.
[] See Montague v. Richardson, 24 Conn. 848.