## N. Y. SUPERIOR COURT.

### THE NATIONAL BANK OF THE COMMONWEALTH agt. T. J. TEMPLE, impleaded, &c.

In an action against co-partners to recover a debt *fraudulently* contracted by *one* of the partners, all the partners are not liable to arrest. Only the partner who made the fraudulent representation can be arrested. ( JONES, J., *dissenting.*)

Whether. if the action is to recover damages for the *fraud*, all the partners can be arrested : *Quere?* (*Per* MONELL. J.)

Arrest and bail are not security for the debt, but are intended as a *punishment* for a wrong ; and the granting of orders of arrest are in the discretion of the court. Being designed as a punishment, they should not be granted against innocent persons.

The act abolishing imprisonment for debt was intended to prevent arrests for *debt alone*, but continuing the power to arrest for *wrongs:* thus indicating an intention to subject the wrong-doer to the consequences of his unlawful act.

*General Term, January,* 1870.

*Before* MONELL, JONES *and* SPENCER, *J.J.*

APPEAL from an order.

This action was brought against the defendants *as co-partners* to recover for money lent and advanced to them by the plaintiff.

Upon an affidavit that the money was obtained through false representations, made by the *defendants,* an order of arrest was granted.

The defendant, Temple, applied to have the order vacated as to him, on the ground that the alleged false representations, if made, were made by his partner, Marsh, and not by himself (Temple); and proved, to the satisfaction of the court, that he was innocent.

The court vacated the order as to Temple, and the plaintiffs appealed.

National Bank of the Commonwealth agt. Temple.

JAMES EMOTT, *for appellants.*
R. J. MITCHELL, *for respondent.*

*By the court,* MONELL, J.—Under statutes existing at the passage of the non-imprisonment act of 1831, a defendant could be held to bail, of course and without any special order for the purpose, in all actions of debt, and in actions upon contract for the payment of money, the performance of service, or the delivery of property, and in actions for conversion of, or replevin, or trespass, for taking personal property, and for trespass upon lands. In all other cases, a special order was required. The *ac etiam* clause in the writ denoted the true cause of action, and determined the question of bail. (2 *R. S.*, 348.)

The act of 1831 (*Laws*, 396) abolished imprisonment on any civil process, in any suit or proceeding, for the recovery of money upon any contract, or due upon any contract, express or implied, or for the recovery of any damages for the non-performance of any contract.

The act, however, provided for the issuing of a warrant of arrest, upon satisfactory evidence establishing one or more of the following particulars: 1*st,* A fraudulent removal of property; 2*d,* A fraudulent concealment of property; 3*d,* A fraudulent disposition of property; and, 4*th,* "That the defendant fraudulently contracted the debt, or incurred the obligation, respecting which the suit is brought."

The provisions of the Code are substantially like those of the non-imprisonment act, and are not, in any respect, inconsistent with the provisions of the Revised Statutes concerning arrests in actions for *torts.* Arrests in such actions are allowed now as formerly.

The effect, therefore, of the act of 1831, and of the Code was to take away, or abolish, the right to arrest a defendant for *debt,* leaving the remedy unimpaired, in actions for *wrongs,* and supplementing it, in cases of fraudulent re-

moval, concealment, or disposition of property, or for fraudulently contracting the debt.

Nor have either of the acts referred to changed or affected the object and purpose of *bail*. Now, as formerly, it is an obligation to render the defendant amenable to final process in the action; and the obligation is fulfilled, if the bail have the person of the defendant ready to be taken in execution. Bail is not, therefore, in any sense, a security for the debt, as the principal may be surrendered at any time, even after judgment in the action, in exoneration of their liability.

Imprisonment of the person of a defendant, which, in theory at least, is supposed to assist in compelling the performance of contracts, or in redressing wrongs is, in its effects and results, a *punishment*. It is not a part of any contract, and may be abolished without impairing the obligation of any contract. Chief Justice MARSHALL says, in *Sturges* agt. *Crowninshield*, (4 *Wheat.*, 200.) "Confinement of the debtor may be a *punishment* for not performing his contract, or may be allowed as a means of inducing him to perform it. But the state may refuse to inflict this punishment, or may withhold this means, and leave the contract in full force. Imprisonment is no part of the contract, and simply to release the prisoner does not impair its obligation."

Chancellor KENT, also says, (2 *Kent Com.*, 399 :) "Imprisonment for debt is not usual, unless the debt was contracted, in the first instance, under deceitful assurances, or unless the debtor has applied his property unfairly, or refused to give to his creditor any reasonable or satisfactory explanation. *And in all those cases he deserves punishment.*"

But the title of the act of 1831, very clearly indicates the legislative view of the meaning and purpose of arrests in civil actions. It is "an act to abolish imprisonment for debt, *and to punish fraudulent debtors*;" and the Code (§

178,) declares that none of its provisions shall affect such act, referring to it by its title, as an act to *punish* fraudulent debtors.

If anything further was required to establish, that the purpose of an arrest is punishment, the very emphatic language of Judge WOODRUFF, in the *People* agt. *Latorre*, (6 *Abb.*, *N. S.*, 63,) will furnish it. In speaking of the act of 1831, he says: "It would not be profitable to dwell upon the reasons moving the legislature to punish fraud, and to treat the fraudulent debtor as a criminal, or to inquire whether it is reasonable to punish a fraudulent debtor with more severity than any other willful wrong-doer." * * * Again, "the general rule is, that no debtor shall be imprisoned, but the exception is affirmatively and explicitly made that to punish fraud, the fraudulent debtor may be taken and committed *as other criminals* ;" and that the legislature intended to punish the fraudulent debtor, and provided for the punishment, "by a clear discrimination between him and the honest man."

The liability of partners for the tortious acts of each other, is confined to such acts as are connected with the partnership affairs, and proceeds upon the principle of agency, the tort being looked upon as the joint and several tort of all the partners, so that they may be proceeded against in a body, or one may be sued alone, for the whole damage done. In law, the act of one, in respect to partnership affairs, is presumed to be with the assent of his co-partners, and the liability arises from such presumption. As each acts as the agent of all, he is supposed to act with the consent of all. In all these cases, the liability is *several,* as well as joint. Formerly, and until the enactment of the Code, a distinction existed between actions, and for a fraud a special action was required. For other torts, the action was trover, or trespass, or replevin, and the liability of all the partners for the tortious act of one, could be enforced only by one of such actions.

Those distinctions no longer exist, but an action may be maintained to recover damages for fraud, or deceit, or for a conversion of, or a trespass to property, without regard to form.

To charge a whole partnership with the fraud of one partner, the *action* must be founded upon the *fraud*. The fraud now, as formerly, can be waived, and a debt, although fraudulently contracted by one partner, may be recovered of all the partners, as a simple debt due from the firm. But when it is sought to enforce a liability of the remaining partners for the fraud, and to recover *damages* for a tortious act, the action must be founded upon the fraud.

An order of arrest has never been more than a mere provisional remedy, designed to secure and retain the person of the defendant within the reach of the final process of the court, and is now allowed only in cases where some *wrong* has been done. The arrest becomes punishment when it is followed by actual imprisonment, which actual imprisonment must always follow where the defendant is unable to furnish bail. The arrest, therefore, is resorted to, and used as a coercive remedy, to force payment, or to compel performance, as a means of obtaining a release from imprisonment, and it is useful to a creditor for no other purpose whatever. The actual imprisonment of a debtor on final process, although a technical satisfaction of the debt, is not in any sense a payment of it.

Beyond its coercive property and power, therefore, arrest and imprisonment is a punishment for a wrong, which the law holds the wrong-doer responsible for. But I think the policy of the law is, as I believe it should be, to reach and subject to punishment, such only as have committed the wrongs, or have done the acts which establish the right to arrest. Such policy was indicated in exempting from arrest heirs, executors, administrators, trustees, and assignees, unless they had incurred a personal obligation to pay the debt, (2 *R. S.*, 348, § 9 ;) and since 1830, females and

soldiers of the revolutiony war, (*Laws* 1830, *Ch.*, 238 ;) and now, under the Code, a female is liable to arrest only for a willful injury.

The liability of all the partners for the acts of each partner, can, as before observed, arise only for acts relating to the business affairs or the co-partnership; and no such general liability attaches when the thing done is not within the general scope and business of the firm, unless the firm has received the benefits of, or in some way, expressly or impliedly, ratified the act. (*Story on Part.*, § 166.) Hence, all the partners are not liable for a conversion by one partner, of property having no connection with the partnership affairs; nor for any other act, not committed in the course of the partnership business. But for torts which arise in the course of the business of the partnership, all the partners are liable, although the act may not have been assented to by all the partners. Hence, where one of the partners commits a fraud in the course of the partnership business, all the partners are liable, although they have not all concurred in the act.

Judge STORY says, (*Story Part.*, § 108,) this liability of all the partners for the fraud of one, "proceeds upon the intelligible ground, that where one of two innocent persons must suffer by the act of a third person, he shall suffer who has been the cause, or the occasion of the confidence and credit reposed in such person." But, this ground does not gain any additional strength by denominating the act a tort, or determining it to be such.

Under the forms of actions, as they existed before the Code, a special action on the case would have been the appropriate remedy to recover a debt which had been contracted by the fraudulent representation of one partner. In such an action the defendant could not have been arrested without a special order. Whereas, if the tort had been waived, and an action of assumpsit, as it was called, had been brought, the defendant could have been held to bail,

as, of course, and without an order; which indicates that the fraud was not formerly considered as potent as the debt. And it may be, that if this action had been to recover for the fraud, that all the remedies to which a plaintiff would be entitled, might have been taken against all of the partners. But in an action to recover the debt, where an order of arrest is no longer allowed, except as a mere incidental remedy, on the establishing of extrinsic facts constituting a fraud, the power of the court to grant such remedy must, necessarily, be derived from such extrinsic facts; yet these facts are no part of the implied contract of indebtedness, nor of the cause of action. It would seem, therefore, to be just that the power should be exercised against, and confined to the partner who has done the wrong. If the innocent partners can be arrested and imprisoned, as a mere incidental remedy, in an action to recover the debt, I see no reason for withholding the order against all the partners, where one only has fraudulently concealed, removed, or disposed of the partnership property. But I have not found any case that would warrant any such conclusion. Yet, each of these acts is a specific ground for arrest.

Courts have always exercised a discretion in granting orders of arrest, when such orders were necessary, as in actions for personal injuries. As early as *Clason* agt. *Gould*, (2 *Caines*, 47,) in an action for libel, the court held that a special cause must be shown. This was followed by *Van Vechten* agt. *Hopkins*, (2 *J. R.*, 293;) *Norton* agt. *Basneem*, (20 *Id.*, 337;) and *Zimmerman* agt. *Cheisman*, (7 *Hill.*, 153.) The latter was an action for assault and battery. A similar discretion has been exercised under the Code. *Davis* agt. *Scott*, (15 *Abb.*, 127,) and such is the practice of this court. Indeed, it may be said of all the cases in which an order of arrest is now allowed, that the order rests in the *discretion* of the court. The language of the Code, (§ 179) is, that the defendant *may* be arrested, and the order *may* be made. This view is expressed by Judge

DALY in *Davis* agt. *Scott, Sup.*, and by Judge HARRIS, in *Lapeous* agt. *Hart,* (9 *How.,* 541.)

It may, however, be said that if the power is discretionary with the judge to grant, or refuse the order, his action is final, and cannot be reviewed. That is probably so, and I, therefore, place the decision of this case upon the ground that the court has not the power to grant the order against an innocent partner; and that, therefore, to attain this provisional remedy, as a mere incident to the action, it must be shown that the partner, against whom the remedy is sought, has, himself, committed the fraud.

There is a substantial reason, as was stated by Judge STORY, (*ubi sup.*) for holding all the partners liable for a *debt* contracted by one, even when it was contracted in fraud, but in the name of the firm. But such reason is altogether insufficient, when it is sought to inflict upon innocent persons, other and criminal conseqnences, which do not affect, or impair, or increase the right to recover the *debt.* Where now, as formerly, the innocent as well as the offending person, was liable for the *tort* in an action *brought to recover for the tort,* a distinction could not, perhaps, be made. All were liable, and the order probably would be general. But where the tort is *waived,* and an action for the recovery of the debt is instituted, the remedy of arrest can be granted only against the person who has committed the acts which authorize it.

The act abolishing imprisonment for debt was intended to prevent arrests for *debt alone.* But the legislature continued the power to arrest for certain wrongs committed in contracting the debt. Thus clearly indicating, I think, an intention to subject the *wrong-doer* to the prescribed consequences of his unlawful act. And the Code has adopted the same provisions. It was not intended, it seems to me, to render every person, who by his mere relations to the wrong-doer is liable for the debt which has been contracted through the fraud of such wrong-doer alone, also liable to be

arrested and imprisoned, unless the fraud is the foundation of the action.

I do not mean, however, to commit myself to any opinion, that even where the action is directly to recover damages for a fraud, all the partners can be arrested, either by order or on final process, for the tort of one partner only. It is enough that we should hold, that in action to recover the debt, an order of arrest as a provisional remedy, cannot be granted against any person other than the one who has committed the fraud.

I am, therefore, of the opinion that the order of arrest in this case, as against the defendant, Temple, was properly vacated and set aside.

The order appealed from should be affirmed, with costs.

SPENCER, J.—I am of the opinion that in an action to recover money for the breach of a simple contract, brought against co-partners, that an order of arrest should issue against those defendants only who appear (by the affidavits) to have been guilty of fraud and deceit, and, therefore, I concur with the judgment of my learned associate. That this order appealed from, should be affirmed, with costs.

JONES, J., (*dissenting*.)—The question presented on this appeal is whether, in an action in assumpsit brought against the members of a firm to recover an indebtedness due from the firm, all the members thereof are liable to arrest by reason of a fraud committed by one of them, in contracting the indebtedness without the knowledge, consent, connivance, privity, or participation of the others.

There is no direct authority in point on the question.

The case of *Townsend* agt. *Bogert*, (11 *Abb.*, 355,) has frequently been cited as such an authority; but on a close analysis it will be found that it is not.

Five judges took part in the decision of that case, three of whom delivered opinions. One of them (Chief Justice

BOSWORTH,) held : 1st. That the affidavits on which the order of arrest was granted, showed a cause of action which of itself gave a right to hold to bail. 2d. That the fraud of one member of a firm in obtaining goods, which have gone to the firm's use, is in judgment of law the fraud of all, in such sense that an action will lie against all of them for it, and that all are liable for the damages caused by it ; and, as a result from this proposition, held, that a partner who knew nothing of the fraud committed by his co-partner, and neither authorized, participating in, or assented to it, was guilty of it himself, within the meaning of that portion of section 179, which allows an arrest when the defendant has been guilty of a fraud in contracting the debt, or incurring the obligation for which the action is brought; and 3d. That the affidavits showed that the partner who was seeking to have the order of arrest vacated, knew that the fraud had been committed and assented to it ; and on these grounds the chief justice refused to vacate the order of arrest.

Justice MONCRIEF, concurred in refusing to vacate the order on the first and third grounds mentioned in the opinion of chief justice.

Justice HOFFMAN, gave no opinion.

Justice WOODRUFF dissented, holding :

*First.* That the action, as shown by the affidavit, was one to recover the price of the goods sold as a debt due by the defendants to the plaintiffs upon and for such sale.

*Second.* While admitting the proposition secondly laid down by the chief justice, he denies the result claimed to arise therefrom, holding that it is only that defendant who has himself been guilty of fraud, who is liable to an arrest in an action upon and to recover the debt, which it is alleged has been fraudulently contracted ; and he says if it were otherwise, then all joint makers of a note might be arrested, though some of them were in truth makers for accommodation, or sureties for the rest, if the latter by fraud, procured it to be discounted.

*Third.* While admitting that if a partner with knowledge of the fraud assents to, adopts, or receives the benefit of the purchase, he is a fraudulent debtor, within the meaning of the clause in question, yet that the affidavits did not bring the moving partner within any of those categories. He laid down the proposition on which he insisted "that in an acfion on the contract for the price of the goods, a partner who has not been guilty of the fraud as an actual participator therein, nor by assenting to or adopting the purchase with knowledge of the fraud, cannot be held to bail.

Justice ROBERTSON also dissented, without delivering any opinion.

Thus it will be seen that three of the five judges did not concur in the result derived by the chief justice from the second proposition ; a majority of the court not having concurred in that result, the case is not a binding decision on that point.

The other cases cited by the appellant, with the exception of *Coman* agt. *Reese,* (21 *How.,* 114,) go simply to establish the second proposition of Chief Justice BOSWORTH, but do not contain any decision or intimation as to the result he derives therefrom.

The case of *Coman* agt. *Reese,* is founded solely on the case of *Townsend* agt. *Bogert*; and is also treated by the court as an action upon the case, founded on the fraud. The question, then, is open for discussion and decision on principle.

It is well established that the law imputes the fraud committed by one partner, while transacting the partnership business, to all the other partners, so as to render them all, by reason of that fraud, liable for the damages sustained in consequence thereof; and the party defrauded has a remedy against all by an action based on such fraud, and in which all are liable to arrest as a part of that remedy.

It is claimed, however, that if the party defrauded elects not to base his action on the fraud, but to bring suit on the contract or debt, which has been contracted or incurred by the fraud of one of the partners in the course of the partnership business, then the language of subdivision 4 of section 179, is not sufficiently broad to authorize the arrest of any one except the actual perpetrator of the fraud, and those who have made themselves participators therein by consent or adoption.

The provision in question is made, not by way of punishment for the commission of a fraud, but to provide a more ample remedy, by means whereof one who has suffered damages by being beguiled out of his property, may compel a satisfaction therefor.

There does not appear to be any substantial reason why he should be debarred of this remedy, when he brings his action for the debt, while he would have it if he based his action on the fraud.

The law declares that for the purpose of civil remedies, the fraud of one partner is the fraud of all. When then a statute gives to the injured party a civil remedy, by way of arrest for a fraud committed in the contraction of debt, it gives that remedy as against all whom the law declares to be parties to the fraud, and to be civilly liable for the consequences arising therefrom, unless it contains special exemption as to some of them.

The provision of the statute in question contains no special exemption; and there does not seem to be any ground or principle on which to exclude, by construction, any of those to whom the law imputes the fraud which was used in the contracing the debt for which the action is brought.

I am aware that some eminent judges and writers have occasionally used expressions which would seem to indicate that, in their opinion, an imprisonment in civil process was intended as a punishment.

The most prominent is the expression of Chief Justice MARSHALL, in *Sturgis* agt. *Crowninshield*, (4 *Wheat.*, 200,) where he says: " Confinement of the debtor *may be a punishment* for not performing his contract, *or may be* allowed as *a means* of *inducing* him to perform it. But the state may refuse to inflict this punishment, or may withhold this means."

This language was used *arguendo*, while considering the question whether the right to imprison was a part of the contract, in which event a state law could not interfere with it as to existing contracts, or whether it was merely a remedy for the enforcement, or consequent upon the breach, of a contract, in which event a state legislature had full control over it.

The language of the learned judge imports that it was apparent to his mind that there were, so to speak, two species of confinement; the one inflicted as a punishment, without reference to the enforcement of the contract, and the other allowed simply as a means to enforce the contract without reference to the punishment for its breach; and that while confinement is, in a general sense, punishment in all cases, yet it is not punishment in a legal sense when it is applied as a remedy to enforce a contract. He was considering the power of a state legislature to abolish all confinement, and he used language to express his opinion that such power existed, as well where the confinement was for purposes of punishment, as where it was used as a civil remedy for the enforcement of a contract.

The case of *The People ex rel. Latorre* agt. *O'Brien*, (6 *Abb.*, *N. S.*, 63,) arose under the non-imprisonment act. That act is entitled "An act to abolish imprisonment for debt, and to punish fraudulent debtors," and its provisions are strict and severe. The learned judge, in the course of his opinion in the last cited case, reasoning from the title of the act, and its strict provisions, expresses his view to be that the act to abolish imprisonment for debt, &c., had for

its primary object the punishment of those whom it allowed
to be imprisoned, the payment of the debt, or appropria-
tion of the debtor's property to such payment so far as it
would go being but secondary. It was not necessary thus
to decide for the proper determination of that case; there-
fore, the remarks of the judge on this subject are mere
*obiter.* Although entitled to great respect as being the
exposition of the views of a learned and able jurist, yet
they have not the force of a decision. I am not at present
prepared to deny the correctness of his views respecting
the statute he was considering; nor is it essential for the
purpose of this decision, that I should do so.

· The arguments in support of the doctrine that the im-
prisonment under the non-imprisonment act was intended
by the legislature as a punishment, affords a strong argu-
ment in support of the proposition that imprisonment under
the Code was not intended as a punishment.

The legislature, while providing for an arrest under the
Code, expressly retained the arrest under the non-imprison-
ment act.

The title of that portion of the Code under which arrest
is provided for is: "Of the provisional remedies in civil
actions," and the provisions of the title are radically different
from those of the non-imprisonment act. Not a word is used,
or an intimation given, indicating that it was the design
of the legislature that the arrest here provided for was in-
tended to be or was a punishment. On the contrary, the
title shows that it was given simply as a remedy in civil
actions. A remedy to whom? Clearly to the plaintiff in
such an action. A remedy for what? The loss, damage,
or injury for which a civil action may be brought.

Thus, then, assuming the exposition of the non-imprison-
ment act, as given in the case of *The People ex rel. Latorre*
agt. *O'Brien,* to be correct, we have two acts; by the one
of which arrest and imprisonment under its provisions
are given as a punishment, and by the other arrest and im-

prisonment, under its provisions, simply as a remedy, in contradistinction to the punishment provided for by the former.

There is, then, nothing in either *Sturgis* agt. *Crowninshield* or *The People ex rel. Latorre* agt. *O'Brien,* which impugns the doctrine above laid down, that in an action against co-partners upon a debt due by the firm, all the partners are liable to arrest under the Code, by reason of the fraud of one of them committed in incurring the debt; and this though the others neither actually participated in the fraud, nor subsequently made themselves participators by consent or adoption.

I, therefore, concur in the views of Chief Justice BOSWORTH as expressed in the result drawn by him from his second proposition, and am of opinion that the order below should be reversed, with costs.