Haywood, J.
Martin commenced an action of ejectment against Waterhouse, in the Circuit Court, for the county of Rhea, for certain lands. A verdict and judgment were given for Martin, and Water-house appealed to this Court. Judge Whyte, being married to the sister of Mr. Martin’s mother, and Thomas Haywood, the son of Judge Haywood, to her sister, the question is now brought forward, at the instance of the counsel on both sides, whether either of these judges be competent to sit, in the examination of this causé. Judge Whyte is admitted, on all hands, *300 to be connected with Mr. Martin by affinity. Thomas Haywood was, for the same reason, admitted to be connected with Mr. Martin by affinity. The counsel for Martin insist that Judge Haywood is also connected with Mr. Martin by affinity. Judge Whyte declines giving any opinion on this point, conceiving that it is to be decided by Judge Haywood alone ; it falls, therefore, to the share of the remaining judges, who think it their duly to join in the decision, to determine according to their best judgment. Should one judge only decide it, and should sit and give judgment, the unsuccessful party may say hereafter that this was a judgment given by one not authorized to give it, and sue the sheriff for carrying it into execution, who will come before this Court, at which time the judge, whose judgment is complained of, will certainly not be competent alone to settle the question. If, ultimately, it must be decided by a majority of the judges of this Court, it seems better to do it in the first instance, before any mischief has happened, than hereafter, when the sheriff, or some innocent person, may be involved in difficulties for acting under a judgment given by one not authorized to give it.
By our Constitution, art. 5, § 8, “no judge shall sit on the trial of any cause where the parties shall be connected with him by affinity or consanguinity, except by consent of parties. In case all the judges of the Superior Court shall be interested in the event of any cause, or related to all or either of the parties, the Governor of the State shall, in such case, specially commission three men of law knowledge for the determination thereof.”
The act of Assembly of 1823, ch. 56, directs the appointment to try all causes in the Supreme Court, which any of the present judges are incompetent to decide; and under this Act a commission has issued, conformed to it. The objections raised at the bar to this commission, so far as relate to the present case, propose for consideration the following questions .- First, whether the Governor can appoint when not all but some of the judges only are disqualified by interest or relationship ? Secondly, whether he can commission a smaller number than three judges ? Thirdly, whether he can give a commission to decide all causes in which the judges are disqualified, or only a special commission to decide all causes named in the commission. ? Fourthly, from which of the parties must the objection come to the judge for being related to one of them ? Fifthly, what is such an affinity as will disqualify a judge ?
First; the Act of 1794, ch. 1, § 1, copied from the Act of 1777, which preceded the Act for establishing a Court of Equity in 1782, enabled one judge of the Superior Court to give judgments in Courts of Law ; and when in 1796 the Constitution authorized the appointment of a special judge, in case all the judges of the Superior Court become disqualified, it meant that so long as there was a competent court, that court' should act, and *301 when not, that others should he appointed. It meant, also, that the appointment, when made, shall be of as many judges as will make the Court a full one, to the end that both parties should have the benefit of a full number, as well as other suitors, in cases where all the judges are qualified. After the law was so altered that two judges were necessary to a decree, and two out of three were disqualified, it was not precisely the case mentioned in the Constitution, where all were disqualified, but in substance it was that case; for no court existed which could determine the cause, and a full court must be provided, not by appointing three judges, but as many as would make up that number, or a full court. If this were not the construction, then, by a change of the law requiring two judges to make a decision, instead of one, a cause never could be decided, where all but one. were disqualified; whereas, the meaning is, that a special commission shall issue, when there are not judges enough to decide the cause, and that it shall be decided by a full court, if those who are appointed will be present. The Constitution is complied with where, there being not enough to act and to decide the cause, so many are appointed as will make a full court.
The second question, whether the governor may appoint a less number than three ? is answered in the determination upon the first question, that he may appoint such number only as will make a full court; otherwise, by the appointment of three there might be a redundant number, and by an equal division, as well as by the uncertainty which of the four should be excluded, much embarrassment might ensue.
Thirdly; if, by the Constitution, a special commission can issue, as to one cause, and there be others similarly circumstanced, it is as well to include all in one commission, as to make as many commissions as there are causes. The Act of 1823, ch. 56, is constitutional.
Fourthly; the objection to a judge for being connected by affinity with one of the parties need not proceed from either of the parties, for he is ipso facto disqualified by the Constitution, till both parties agree that he shall sit. The party with whom he is connected has as much to apprehend as the other; for such is the nature of man, that frequently to avoid one imputation, he will go as far to the other side as it was feared he would on the side of his relation. The dread of censure is^ as much to be deprecated on the one side as a leaning towards his relation is on the other. Therefore, the Constitution has used the word “ parties ” in the plural number.
Fifthly; what is such an affinity or nearness as, according to the meaning of our Constitution, will disqualify a judge ? The Constitution intended that a judge, like a juror, should be above exception and free from suspicion. 1 Bl. Com. 361. He must not be in a situation, in which, for any of the causes specified in the Constitution, either party might reasonably have a cause of suspicion that the judge is not as favorable to him as to his adver *302 sary. It is true that the relations of the wife are the relations of the husband, but not of his relations, therefore, may intermarry with each other, as the brother of the husband with the mother or sister of his wife. But it is equally true, with a view to the feeling of preference or favoritism, which the relations of the husband may have for the relations of the wife, there is a nearness created by the marriage of the husband, which the law in the administration of justice is jealous of, and that jealousy is founded upon experience and a just estimate of human nature. It justly suspects that the partialities of the wife may be transferred, in a higher or lesser degree, through the medium of the husband, to his relations. This suspicion is entertained by the common law, which rejects a relation of the husband, who though no relative of the wife’s kindred, is drawn nearer to them than to the rest of the world, by the connection which the husband and wife have formed. In Co. Litt. 156, if the son of a juror hath married the daughter of the plaintiff, the juror may be challenged for favor. By parity of reason, if the son hath married the sister or an aunt, the juror is liable to the same objection. A challenge for favor is where the person challenged is so situated, because of a connection by marriage, that a suspicion is raised against his impartiality, which continues till removed. And in Co. Litt. 157, this is said to be an apparent cause of favor. It is entertained by the Constitution, as well as by the common law, and equally precludes the person to whom it applies from acting in his proposed capacity, till it be removed by the appropriate trial and test of impartiality. In the case of a juror the mode appointed by the common law is the examination and report of triers; by the Constitution it is by the consent of both parties, as the suspicion continues unremoved till taken away by the consent of both parties ; the judge remains disqualified as the juror at the common law does, till reported indifferent. This relationship is not boundless, for then it would extend to the whole human race, but is limited, as consanguinity is, to the ninth degree, as some authors say. So here, in case of affinity, the suspicion ceases when the judge excepted to and the party on record are removed to a distance from each other which renders an affection, in the sense of nearness, very improbable; as, for instance, if one be in the fourth and the other in the fifth degree fronj the common ancestor, from whom their relationship is derived, and perhaps suspicion may be deemed to cease at some point nearer to the common ancestor.
If this view of the case be correct, here is such a degree of nearness as, according to the spirit of our Constitution, disqualifies the judge to whom the exception applies. But we will keep this point under consideration a few days, and will look into authorities, and mention the subject again.
Peck, J.
It being suggested from the bar that Judges Whyte and Haywood were incompetent to sit, and determine the questions arising in the above case because of an affinity existing between those members of the *303 Court and Martin, one of the parties; and it being agreed that Judge Whyte, having married the aunt of Martin, was such a relation of the said Martin as disqualified him from sitting in the determination of the cause ; and it being agreed that the son of Judge Haywood had intermarried with an aunt of the defendant in error, Martin, it was made a question before the Court whether there was any affinity subsisting between Judge Haywood and Martin, and if there was any, whether it could be traced to be within such degree of nearness as, under the Constitution of Tennessee, would render Judge Haywood incompetent to preside.
It may not be improper to remark that the attorneys concerned for Waterhouse waived all exception to either of the judges, and proposed entering their consent upon the record; but those concerned for Martin would not enter any consent upon the record that either of those judges should sit upon the trial.
There being other causes pending in the Court, where only one of the three judges present could sit, and a commission being produced and entered of record, constituting John A. Mc’Kinney, Esq., a special judge for the trial of all such causes in East Tennessee as any two of the judges of said Court could not sit in. The act of 'Assembly under which this commission issued provides for an adjournment of the causes thus situated to some given period of the term; hence, it became necessary to know whether or not Judge Haywood was competent to sit in this cause of Waterhouse and Martin.
The whole Court concurred in the opinion that, to qualify a judge incompetent to sit, under the Constitution, the consent of both parties was necessary; this being wanting, Judge Haywood gave it as his opinion that the affinity was to be traced to himself sufficiently near from Martin to render him incompetent.
Judge Peck was of a- different opinion, and gave for reason that the words of the Constitution are: “ No judge shall sit on the trial of any cause where the parties shall be connected with him by affinity,” &c. Now, the farthest the law goes is to make Martin, the defendant in error, connected to the son of Judge Haywood by affinity; and as the relations of the husband are not, because of that affinity, the relations of the wife’s relations, so neither can Judge Haywood be a relation of Martin, the defendant in error, within the words of the Constitution. 1 Black. Com. 135; Christian’s n. Cooper’s Justinian, 422.
The reasons are very strong why the Constitution did not contemplate so remote an affinity operating in exclusion of a judge; as the law stood before the formation of the Constitution, no degree of nearness excluded a judge; and when our Constitution did fix a degree how far did it intend to go beyond that degree ? Pass it, and where is the stopping-point?
*304 Suppose the parallel a good one between judge and juror, in settling the degree, still the rule touching jurors will not exclude the judge, for Judge Haywood stands in a situation where it would be doubtful if he could be challenged, even for favor. Coke, Lit. 157. And the reason why a juror is permitted to be challenged for favor is, because, in the language of the books, a weak man may give a leaning and weight to the evidence on the side of his relation’s friend that it would not justify ; and being in that situation, it is left to those who sit with him to be called as triers to say if there be favor or no favor. Now, this cannot apply to the judge; it was not intended by the expression used, because, w'here is the analogous proceeding to try the question ? Or where is the fact the judge has to weigh, which might place him in the situation of a weak juror ?
The Constitution is plain; can have a construction which neither abridges nor enlarges powers with a judge; fix the point of affinity “ with him,” and he is excluded; if that be not fixed, even the indelicacy of captious objection, the insinuation of distrust or doubt, will nor can have any weight in removing from his seat him in whom, under the Constitution, the country has reposed the sacred trust of judging.
On the division of opinion between Judges Peck and Haywood, the question remained unsettled, whether or not this was one of the causes contemplated by the act of Assembly, or one on which the commission just produced operated. If Judge Haywood was qualified, then there was a competent court; and as the Constitution did not fix the degree, but left it to the law to determine the affinity necessary to exclude a judge, so both those judges, Haywood and Peck, were of opinion that Judge Whyte should enter upon the consideration of the question made. Judge Mc’Kinney pressed the necessity of an opinion from Judge Whyte, because of the delicate situation in which his silence might place both himself and the remaining judge qualified to sit. But, for the reasons given in his opinion, Judge Whyte remained silent on the. questions made.
This question was one which did not go to the merits of the cause before the Court, being wholly collateral. If Judge Haywood was incompetent by reason of the affinity, Judge Mc’Kinney was competent, under his commission, to fill the Court, and vice versa; acting either way, an error might be committed, and the judgment rendered, should there be one, stand not only as a monument of the imbecility of the Court, who improperly might act, but involve officers and the judges making it in difficulties.
The legal point was necessarily raised by the act in question, and the parties concerned were entitled to its determination; if this point was not determined, the cause could not be taken up ; and should the present judges who felt it their duty to determine it, remain divided, and Judge Whyte remain of the opinion that he had nothing to do with the question raised, *305 then would be exhibited to the world a novel spectacle; a cause upon the docket for trial; the parties ready; judges to.hear it, but because a previous legal question could not be settled by reason of the silence of one of the judges, an indefinite postponement must be the consequence.
The bar had the right to raise the question, and' if they had that right, they bad also the right to have it determined.
Whyte, J.
Before this cause was called a preparatory inquiry was made by the bar, whether there was a competent court to sit in the cause ; and it was stated that a constitutional objection existed, and was taken, to two of the judges, by the counsel for Martin. The objection was- this: that each of the judges objected to was related to the party, Martin,- by affinity. The counsel for Waterhouse said he waived the objection made on the other side, and gave his assent to the sitting of both the judges objected to, and further he insisted that his assent to their sitting destroyed the objection taken, because the meaning of the Constitution, art. 5, § 8, must be the consent, not of both parties, but of that party between whom and the judge no connection by affinity existed.
By both sides it was contended that each judge of the Court could not decide this question for himself, but that a majority should pass upon the objection, as applied to the case of each judge, as a teste for his qualification.
The Constitution of Tennessee, art. 5, § 8, on which the objection is founded, is in these words: “ No judge shall sit on the trial of any, cause, where the parties shall be connected with him by affinity or consanguinity, except by consent of parties.”
This is the mandate of the people of Tennessee to every judge of the State, given by the most solemn of instruments, the Constitution, and in its nature it must be a mandate directed to him personally, to be executed by him according to his own judgment, and not dependent on the judgment or opinion of others. If the import of the mandate is dubious, as the argument at the bar on its construction implies, the very nature of the office of judge recognizes no superior or intermediate power between the mandate and himself under, or by means of which, a construction of it is to be given for his government, or by which his judgment therein may be directed, controlled, or superseded. Its execution is likewise personal and solely with himself, and incapable of being resisted by the interposition of others, or of being omitted, and its omission excused or justified by the like interposition. As he is the sole judge, so he has the whole responsibility. If in this respect he disobeys or transgresses the Constitution, he is answerable by impeachment, and it would be an argument addressed to the mercy, not to the justicej of the Court of Impeachment, that such and such was not his own judgment and act, but the judgment and act of two other judges of equal powers and authority.
*306 It is said in argument at the bar that the extent of the term “ affinity ” is a proper question for this court to determine, as a court consisting of three judges, and of course, in case of a division, a majority must govern. To this I answer, that when such a question comes properly before the whole court, or a court consisting of two members only, as it may do in a cause wherein affinity affects the title, as under the statute of distributions, or under a disposition in a will, and analogous cases, or where affinity enters .into the constitution of a crime, in these, the right to the property, or the being guilty of the crime, depending upon the question, then the opinion of the whole court is rightly asked, but that is not the present case. In that case you have a Court, and the question is rightly propounded unto them ; but here you have not as yet a court for the question, and the question is premature before you have one.
The present question is, have you a court; have you one, two, o.r three judges; or have you any judge to constitute this court P No property depends on this question at present, but judge or no judge depends upon it, and it can only be solved by the judge himself, and that upon his own responsibility, whether he is so or not by the Constitution.
With regard to the construction of the Constitution offered by the counsel contrary to its words, to wit: in making the word “ parties ” mean party only ; and when this step is made, then, by a farther progress in construction, that one in particular of the parties is meant and indicated ; to wit, that one between whom and the judge there is no connection by affinity. This I shall answer, by citing part of an opinion of the Supreme Court of the United States, in the case of Sturges v. Crowningshield, 4 Wheat. 202, 203, as delivered by Chief-Justice Marshall: “Although,” says he, “ the spirit of an instrument, especially of a constitution, is to be respected not less than its letter, yet'the spirit is to be collected chiefly from its words. It would be dangerous in the extreme, to infer from extrinsic circumstances, that a case, for which the words of an instrument expressly provide, should be exempted from its operation. Where words conflict with each other, where the different clauses of an instrument bear upon each other, and would be inconsistent, unless the natural and common import of the words be varied, construction becomes necessary, and a departure from the obvious meaning of words is justifiable. But if, in any case, the plain meaning of a provision, not contradicted by any other provision in the same instrument, is to be disregarded, because we believe the framers of that instrument' could not intend what they say, it must be one in which the absurdity and injustice of applying the provision to the case would be so monstrous, that all mankind would, without hesitation, unite in rejecting the application.”
It is my opinion, therefore, that I have no right or power to pass upon the qualification of any of my brother judges of this Court.

*307
Addition delivered the next day, on further argument at the lar.

It seems to me a proper course to be pursued on the present occasion, and on every similar occasion is, that when an objection exists or is supposed to exist against the sitting of any judge in a cause, that upon the objection being stated, or not stated to him, it is competent for him to say, and it is his duty to say, whether he can sit in the cause or not; he may or may not assign his reasons for so doing, it is with himself; and an entry will be made on the records of the court, whether he considers himself capable of sitting or not, and will sit or not sit; and if he assigns reasons these reasons also to be entered. This course, if now adopted, removes all difficulties, and attains every object in view; it will show of record, whether you have a court of the present judges or not; it will also show of record, the fact introductory to the sitting of the special judge in these causes, and at the same time show the reason and necessity of his sitting; it will also, in reference to impeachment, furnish evidence in support of the prosecution, and exculpatory evidence against it, according to its relevancy and truth.
According to the above course, an entry to the following effect might be made, to wit: “ in the several causes on the docket, now depending in this court for trial, between James G. Martin, on the one side, and Richard G. "Waterhouse on the other side, it being suggested that two of the three judges composing this court are not qualified to sit in these causes, owing to an objection, founded on the fifth article and eighth section of the Constitution, and that, therefore, if the objection is well taken to them, another judge is necessary to be added to the third judge of this court, to form a competent court for their trial; and it appearing that John A. Mc’Kinney, Esq., has been commissioned by His Excellency, Governor Carroll, to sit in all cases in the Supreme Court, for the first and second judicial circuits, in which a competent number of the present judges cannot sit, to form a court; and it being further suggested that before these causes can be tried by a court composed of the said third judge, and the special judge so commissioned, it must judicially appear that the said two judges objected to are disqualified to sit in them ; whereupon Robert Whyte, one of the said judges, being asked touching said suggestion, answered, that he considered himself disqualified by the Constitution to sit as a judge on the trial of the above causes, and therefore refused to sit, and assigned the following reasons, to wit: that the said James G. Martin, one of the parties, was his wife’s sister’s son.”
This, in my opinion, is the proper mode by which the disqualification of a judge for the sitting in a cause ought to be made, and ought to appear; he cannot.be disqualified by the opinion of others; it is his duty to sit by his own judgment alone, upon his own responsibility. It never would do, on the one hand, for a judge to shrink from his duty, and shelter himself *308 under the opinion of a majority, allowing his disqualification, or, on the other hand, to be driven from the discharge of his duty by the opinion of a like majority, denouncing him disqualified.
Many cases might be put,-but which I deem unnecessary, to show that, if a majority has the physical power of qualifying or disqualifying the minority, there is no calculating the consequences. By this mode, a judge might be compelled to sit upon and adjudicate the cause when his own son or his own father is a party. These are extreme cases, it is true ; and not likely to happen, but they are within the principle, and, being so, they are the best kind of cases to test the correctness of that principle, for they present it naked and undisguised, free from those softening circumstances, which, in less strong cases, might veil its innate deformity, but that at some time or other, on a proper occasion, would produce the most baneful effects on society.
At a subsequent part of the term, when the cause was about to be called, Haywood, J. delivered the final opinion of Judge Peck and himself, as follows: —
Having prosecuted a very industrious research into the books,and consulted together upon the consequences of every interpretation which could possibly be given to the term “ affinity,” as used in the Constitution of this State, as well as into the arguments and reasons which either oppose or maintain the position that the judges of this Court, and not one of them alone, must determine all questions respecting the meaning of every clause and sentence in the Constitution and laws of this State. Two of us have.come to the following conclusions: —
That it is the duty of this Court, and belongs to it only, to decide the meaning and extent of the term “ affinity,” as used in our Constitution, as it does to decide and fix the meaning of every other term used therein. It is peculiarly proper to fix a standard, in the instance of judges or justices excepted to. for affinity, to obviate mistakes in the beginning, and to prevent the litigation which would almost inevitably follow the supposition that, in assuming jurisdiction, the judge or justice had not acted correctly; for, whatever course he might take, it would be equally probable, in an unsettled state of the question, that he might be wrong. Many lawsuits might spring from this uncertainty, and must continue forever to spring up, till judicially settled by the supreme tribunals of the country.
These controversies, when brought before this Court, must either be settled by the judge alone, who assumed jurisdiction, or by this Court; and if by the latter, then eventually this question must be settled by this Court; and if ultimately, why not primarily? If ultimately to correct mischief, trouble, and expense, why not in the first instance to prevent them ? Why leave every judge to pursue a different course, withholding *309 from all any common standard to which they might all conform, exposing him to complaint, whatever course he may take ? Was it the intent of the Constitution that he should be thus implicated in difficulty ? And that the public should be exposed to the danger of his mistakes, and to the confusion which the mistakes of different judges, in the various courts of the country, might occasion ? Why should the convention have desired to see such a state of things? Why should it desire that this Court should not interfere, and prevent them by a timely exposition ? Two judges may not exclude a third from his seat, but they may fix the rule by which his conduct is to be regulated. This Court, though it will not say to a justice of the peace, or any inferior judge, “ You shall not sit in any particular cause,” may yet set before him the rule to which it is expected he will conform. And if, in the case of an inferior judge, this Court will correct his mistake, in assuming jurisdiction, why not also the same mistake, committed by a judge of this Court, by giving redress to the party injured ? And why not ascertain the rule to prevent mistakes, as well for the latter as for the former ? The mistakes of the judge are to be corrected by impeachment, it is said. Will a judge be answerable in any case for a mistake in judgment, when he has done the best he can ? God help us, if every error we commit must be the subject of impeachment. The rule of the common law is, that no judge is criminally responsible for an error in judgment; 2 H. P. C. ch. 13, § 20; 1 Burr. 556; 2 Burr. 785, 1162; 1 T. 653; nor would the people of this State ever think of making him so, though they might be displeased, if he would not express his honest opinion ; and then what relief has the injured party if the judge cannot be impeached, and if none but the judge can decide the point which he has appealed from? Suppose this “ favorite ” remedy actually resorted to, and the judge convicted of the error complained of, will the party injured be relieved thereby ? Must he not still come to this Court for judgment upon the point in which the error is supposed to be committed ? Will the pleasure received from the impeachment be exquisite enough to compensate for the wrong he has suffered ? If not, then it is better not to lay, as it were, a trap for the judge, into which he must fall, whatever course he pursue, and not without involving some innocent victim. All this may be prevented by a timely and candid exposition of the dubious sentence, when the assumption of jurisdiction is complained of, and the proceeding is alleged to have been coram non judice, whether of a special judge or of a judge of this Court; and upon the coming of that complaint into this Court, suppose there are two judges, who think the jurisdiction wrongfully assumed, must the opinion of a third, who thinks otherwise, prevail ? Must his opinion outweigh that of the other two ? If not, then the assumption of jurisdiction in the first instance without the approbation of the other two, is but the beginning of new controversies, engrafted upon the old one, *310 more embarrassing than the old one. If it must outweigh the others, then a grievous error may be committed, for which there is no redress, and the sufferer can only appeal from him who did the injury to him who did it. The end to which the reasoning employed conducts us is one where great injustice may be done, the judge be not answerable, and redress be placed completely beyond the reach of the sufferer. Either this is the result, or the doubtful point must be settled by a majority of this Court, and should be settled in the first instance rather than in the last resort. Suppose the judge excepted to not to be at the term at which the special judge appears to take his seat, must the whole business be suspended until he can make his appearance ? Or will the judges then present decide whether the causes of exception to the absent judge are such as disqualify him, and authorize the special judge to act. The judges present, we think, should settle the question, though one of them be disqualified to sit in the cause; for, though his own affinity might disqualify him to decide upon the questions arising in the cause, it would not disqualify him to decide a point not peculiar to that cause, nor originally in controversy between the parties to it. A question which he may as well decide, in case of exception to another, as in case of exception to himself, for one and the same cause; for instance, if two judges stood precisely in the same circumstances as the one excepted to, if one of them could decide upon the previous question of his own qualification, because a point not in controversy between the parties, so, likewise, could he decide the same point in relation to another judge, excepted to for the same cause, for the same reason that it was not a point in controversy between the parties, but a question of construction, in which all the citizens of the State were interested.
It is certainly not a forcible argument in favor of the position that each judge, acting upon his own judgment, and each differing from all the others, will render this cause forever undeterminable; it is, on the contrary, the strongest of arguments in refutation of the position, unless it be more systematic to have confusion than regularity, and causes of perpetual duration rather than causes to be speedily determined; unless it be better to have uncertainty in the law rather than certainty, and judges impeached for not knowing how to act rather than judges proceeding regularly by an ascertained rule. If it be better not to have these inconveniences, that reasoning which leads to opposite results is certainly to be the most approved; and this is, that a common standard should be provided for all the people of this State, — judges, justices, and all others — by which to know who shall judge them, and who not; to whom to render obedience, and to whom not. And that such standard must be established by the supreme judges of the land, who finally must settle all doubts upon the Constitution and laws of this State.
*311 This is a point in which a majority of the judges of this Court very clearly concur.
And then the next matter for consideration is, what is the meaning of the term “affinity,” as used in our Constitution? We will presently point out the evils which flow from the opinion to which we inclined a few days ago. At present, we will endeavor to ascertain from hooks of authority the precise signification of the term “ connected by affinity,” and next, whether it will be proper or suitable to the views of the Constitution to go beyond the precise signification. In Cooper’s Justinian, 422, affinity is defined to be “ the connection between the husband and his wife’s parents, and the wife and her husband’s parents.”
“ Affines sunt viri et uxoris cognati, dicti ab eo, quod ducc cognationes, quce diversee inter se sunt, per nuptias copulantur; et altera ad alterius cogna-tionis finem accedit ; namque conjungenda affinitatis causa jit ex nup-tiis”; Dig. 38, 10, 4; “there are no degrees strictly speaking in affinity, as there are in parentage or consanguinity; but I am .considered as related to the parents of my wife in the same degree as she is. Although affinity takes place between me and my wife’s parentage, and between my wife and mine, yet this does not induce any kind of relationship or affinity between our respective parents or consanguvnei; for their situations in society ought not to be affected by our contracts ; affinity, therefore, can only affect the man and woman contracting.” This is the doctrine of the common law, as appears by the case of Oxenham and wife against Gayne, in C. P. 30, ch. 24; Bac. Ab. marriage, 529, where the Court pronounced the rule to be, that “ affinis mei, affinis, non est mihi affinis; the relation of my relation is not related to me.” In Co. Litt. 527, it is laid down that the marriage of the juror’s son with the daughter of the plaintiff, is not a principal cause of challenge to the juror, as it-would be if the juror himself had married the daughter of the plaintiff. In the latter case, agreeably to the cited rule, the juror would be related to the party; but in the former he is no relation at all. This is more fully explained, and accounted for in 3 Ba. Ab. jurisdiction, letter e. § 5 ; there it is said that the words of the writ of venire facias for summoning jurors are per quos, rei veritas, melius seiri poterit, et qui nec, the plaintiff, nee the defendant, aliqua affinitate attingunt.” The words in this writ are the same as in our' Constitution ; and the author says, “If the juror’s son has married the plaintiff’s daughter, it is a challenge to the favor, because this is not contained within the words of the writ, and therefore no principal cause of challenge, but only to the favor, because such juror is not within the power of the party. And why, it is asked, is he not within the words of the writ which uses the words “ connected by affinity ” ? Because, though the juror be related to the daughter of the plaintiff, he is not related to the plaintiff. The same rule is laid down in the note to 1 Bl. C. 435, where it is said, from the book cited *312 there, “ that affinity always arises by the marriage of one of the parties so related; as a husband is related by affinity to all the consanguinei of the wife, and vice versa, the husband to the wife’s consanguinei; for the husband and wife being considered one flesh, those who are related to the one by blood are related to the other by affinity ; but the consanguinei of the husband are not at all related to the consanguinei of the wife,” &c. The conclusion from all these authorities is that the father of a son, whose wife is the aunt of the plaintiff, is not connected by affinity with the plaintiff; nor vice versa; for the son only has formed the connection, with which the father is not affected ; and the Constitution says the plaintiff must be connected by affinity with the judge.
But in the case of a juror, his situation in respect of the plaintiff, who is the relation of his son, gives reason to suspect that he may be more favorable to the one side than to the other. Does the spirit and meaning of the Constitution embrace this case as well as affinity strictly defined ?
If it does, then a judge is more easily to be removed from examining the cause than a juror is, because, there being no mode of trying his indifference, as there is of a juror’s, the objection to him must be absolute, whereas, for the same cause precisely, the juror might be declared competent by his triers. And we think it was not the meaning of the Constitution to make a judge objectionable in a higher degree than a juror would be for the same cause.
Secondly, as there are no degrees of affinity between the relations of the wife and those of the husband, the objection to the judge in such a case, would not only be absolute, but would extend to every relation of the son’s wife, when, in respect of his own kindred by blood, it would be confined to the eighth or ninth degree, counting from one to the other, through the common ancestor. This would inevitably happen unless a computation of degrees should likewise be established between the mutual kindred of the husband and wife, which this Court cannot establish.
Thirdly, objections to judges and justices would greatly multiply to the hindrance of the due administration of justice, and could never be regulated by the Legislature, for being unlimited, and not confined to degrees by the Constitution, n'either could they be confined by the Legislature, and every act of Assembly for the purpose would be impugnable for repugnance to the Constitution. Who can say what is the degree of kindred between the father of the husband and the nephew or cousin of the wife ? Or between the father’s nephew and him ? Or between the son of the cousin and him ? There is no name for the degrees of relationship between the consanguinei of the wife and those of the husband; because, there is no such relationship to be counted. Should the Court adopt the exception to a judge that may be made for favor tó a juror, because the son of the judge has married the daughter of the plaintiff, the rule must be adopted as it is, *313 and then the exception would be confined to that party whether plaintiff or defendant, between whom and the judge there was not the color of propinquity, which raises the suspicion. For if the judge could not act but by the consent of both parties, and the juror could be made competent by the assent of one party only, then the judge could be more easily rejected than a juror could be for the same cause. And supposing the objection must come from him, who is the stranger to the judge, then here the objection is not made by the stranger, but by that party who has the color of affinity on his side, and with partiality for whom the mind of the judge is supposed to be affected.
We are therefore of opinion that the spirit and meaning of the term “ connected with him by affinity,” used in the Constitution, ought not to be extended beyond the definite meaning which it has in writs, statutes, and other legal instruments; that the exceptions made to Judge Haywood are not valid, and that the present judges can constitutionally and legally form a court for the decision of this cause.