Ieshex, J.
This action was brought by the plaintiff to recover from the defendant tolls due by the Creole, in passing through “ Grant’s Pass,” from the 26th October, 1865, to the 14th March, 1866, say----$3,183' 20
Damages for non-payment, fifty per cent.................. 1,591 60
$4,774 80
And for this gross amount, judgment was rendered for the plaintiff.
In the month of February, 1839, the General Assembly of the State of Alabama passed an act entitled “ an act to authorize John Grant to cut or excavate a channel or canal through the shoal or shoal-reef, which now obstructs the inland navigation between Dauphin Island and Cedar Point, in the county of Mobile.”
This act seems to have been passed under the following circumstances: Before the opening of “ Grant’s Pass,” the whole transportation between New Orleans and the places on the Mississippi Sound, the waters of Mobile Bay, with few occasional exceptions, passed outside the islands, and was exposed to the delays, embarrassments and dangers of a voyage on the Gulf of Mexico.
A more safe and less difficult communication was required for the increasing traffic and travel between the Eastern States and the city of New Orleans.
The inconveniences were such, that at the session of Congress of 1825 an appropriation was made for the construction of a proper inland passage, to be expended under the superintendence of the engineer-corps of the United States, through the shoal or shoal-reef. The engineers selected one of the natural channels, which now exists, and the money then appropriated, with one or two other appropriations, were expended to accomplish the object desired.
Major Chase, of the engineer-corps, reported that it was impracticable *330 to construct a navigable channel through the reef, and no further appropriations were made.
The failure on the the part of the scientific and experienced officers of the United States, effectually prevented the enlistment of enterprise or capital in the undertaking proposed by John Grant, as to the construction of the work needed, and he was compelled to rely upon his own energy, skill, and the means he could command, to cut or excavate a channel or canal through a shell reef, about two miles in length, and it is not a matter of question, that the work was punctually completed, and has been suitably maintained for the purposes of navigation.
The first section of the act in favor of Grant authorizes him to enter upon and take possession of so much of the shoal as may be necessary to cut or excavate a channel or channels of sufficient depth and width, to afford a good and safe inland passage for steamboats and other vessels in the trade, between the waters of the Mobile Bay and other places in the Gulf of Mexico; and said Grant is authorized to build all such lighthouses, beacons, wharves and other buildings, as may be necessary to carry the object of the act into full effect.
The second section allows him to charge and receive from all such boats or vessels as may go in or out of such channel, specified rates of toll, with facilities of collecting them by suit.
The third section invests the grantee with all the rights and powers necessary for the construction and repair of said channel or channels, and the State stipulated and agreed that for and during the space of twenty-five years from the passage of the act, he should have and enjoy the exclusive right and privilege of constructing a channel or canal, for the passage of steamboats or other vessels, through the shoal or shell-reef referred to.
The fourth section authorizes him to sell or convey any portion, or all of the rights and privileges conferred on him by the act, at any time after he had so far completed the work as to admit the passage of steamboats or other vessels drawing five feet of water.
The fifth section provides that, if any person should wilfully or carelessly do any act whereby said work shall be injured or impaired, or the navigation of the channel obstructed or hindered, whereby the said Grant or his assigns should be obstructed or hindered in the prosecution or enjoyment of the work, said person shall be liable to a fine and to a suit for damages.
The act imposes upon the grantee the obligations to complete the work in twelve months, so as to admit the passage of vessels drawing five feet water, and to maintain the work in such a condition of repair that vessels should not be hindered in passing for six consecutive months, under pain of forfeiture; also, that none of the existing channels should be obstructed or interfered with by him.
The plaintiff has been in possession of the canal made by him since 1839, and has collected tolls without any challenge from the public authorities of the State of Alabama.
He has not forfeited the privilege granted by any misuses or non-uses. Nor is it pretended that he has failed in the performance of his duty.
The defendant objected in the lower court—
*331 1. That the act is unconstitutional, and because it imposes a tonnage duty without the consent of Congress, in violation of the Constitution of the United States, and the act by which the State of Alabama was admitted to the Union.
2. That the act is a regulation of commerce, and- repugnant to the Constitution of the United States.
3. That the act has expired by its own limitation; and
4. That the canal has been under the control of the military authorities of the United States, during a portion of the period in which the defendants used it, and that the defendants are not chargeable.
In this court, the objections urged against the plaintiff’s claim are restricted to three grounds:
1. Admitting the plaintiff’s right to recover in this case, the amount allowed is not justified by the evidence.
2. The act under which the plaintiff makes this claim, expired by its own limitation on the 2d February, 1864, and consequently there is no right to recover any amount whatever; and
3. That the capture by the Federal troops in August, 1864, of “Grant’s Pass,” which had been previously occupied and fortified by the Confederate authorities, vested a title by the laws of war in the United States, and that the navigation was free from toll.
The objections to the unconstitutionality of the act being waived — the first question in order is, whether the grant has become extinct by limitation; if it has, the plaintiff’s claim would have no basis to rest upon.
The Supreme Court of the United States, in the case of the Binghampton Bridge, say: “All contracts are to be construed to accomplish the intention of the parties, and in determining their provisions a liberal and fair construction will be given to the words, either singly or in connection with the subject-matter. It is not the duty of a court by legal subtlety to overthrow a contract, but rather to uphold it and give it effect. And no strained or artificial rule of construction is to be applied to any part of it. If there is no ambiguity, and the meaning of the parties can be clearly ascertained, effect is given to the instrument used, whether it be a legislative grant or not. The Court state the principle of strict construction. They say: “ The principle is this, that all rights which are asserted against the State must be clearly defined, and not raised by inference or presumption; and if a charter is silent about a power, it does not exist.
If, on a fair reading of the instrument, reasonable doubts arise as to he proper construction to be given to it, these doubts are to be solved in favor of the State; and when it is susceptible of two meanings, the one estricting and the other extending the powers of a corporation, that lonstruetion is to be adopted which works least harm to the State. But f there is no ambiguity, and the powers conferred are clearly marked, ,nd their limits can be readily ascertained, then it is the duty of the lourt to sustain and uphold it, and to carry it out to the true interest nd meaning of the parties to it. And any other rule of construction rould defeat all legislative grants, and overthrow all contracts.
The doctrine thus enounced, is in accordance with the cardinal rule lid down in Art. 13 of the Louisiana Code. This Court, keeping in view *332 the principle that it is its duty to ascertain the intention of the Legislature, and to give effect to it, considered itself bound to carry out their intention according to a fair and liberal construction to acts passed specially, with the view to the accomplishment of great public good, by the promotion of internal improvements. See the case of New Orleans v. St. Romes, 9 A. 577.
With these sound rules of interpretation to guide us, the meaning of the act may be ascertained from a disquisition of it, in its entirety.
The point essential, in the present controversy, regards the right of the plaintiff, under the grant, to hold and possess the canal and the accessory works by whatever title it confers upon him, and to collect and receive tolls, notwithstanding the clause of limitation contained in the act, and the expiration of the time limited.
As we have seen, from the several sections of the legislative act, the plaintiff is authorized as grantee to take possession of so much of the shoal as may be necessary to cut or excavate a channel or channels and concomitant therewith, to build such light-houses, wharves, etc., as may be necessary to carry the object of the act into full effect; and he is invested with all the rights and powers necessary for the construction and repair of said channel or channels; and fines and damages are recoverable, if his work is wilfully and carelessly injured or impaired, or the navigation of the channel obstructed, or he is injured in the prosecution or enjoyment of the works; and by way of recompense for his skill, work and expenditures, he is allowed to charge or receive tolls, etc;
Here then is a license coupled with an interest, which amounts to a grant. 2 Bouvier’s Inst. 568. And there is no limitation as to time in the act, in regard to that franchise.
But the grant was not an exclusive license or a monopoly, as, without a protective clause in favor of the grantee, the General Assembly of Alabama might at any time confer similar concurrent privileges upon other persons, with whom the grantee would be brought into injurious competition. See the cases of the Charles River Bridge, 11 Peters, S. C. R. 422, 71; Tuckahoe Canal Co. v. Tuckahoe, R. R. Co., 10 Leigh’s Va. Rep. 42, 71; 13 How. S. C. R. 71; 9 Geo. 518, 526; 5 Cush. 375; 2 Gray 1, and the Pontchartrain Railroad Co., 11 A. 353.
Considering the magnitude of the work undertaken by the grahtee, and as incentive to the performance of the work designed, the State made the grant an exclusive one; not however in perpetuity, but limited to a term of twenty-five years, during which time the grantee’s monopoly protected him from even legislative interference, in granting similar privileges to others.
The clause of limitation, by the very letter of the act, applied solely to the plaintiff’s prerogative or exclusive privilege, and to no other right,' title or privilege, vested in him by the grant.
In reaching our conclusion, as to the proper construction to be placed upon the act, we have not permitted the bill presented by the plaintiff on the 30th November, 1865, to the Legislature of Alabama, of which he' was then a member, to escape our attention.
The bill purported to be an amendment or supplement to the- original act in favor of the plaintiff, and it contained four sections.
*333 It was rejected ¿ra loto, either, as may be supposed, because the rights'; and privileges originally conferred were thereby sought to be extended or enlarged, which, under special orders No. 83, from Headquarters of the Department of Alabama, could not be done without the previous consent of the government of the United States, or because the existing grant ¡ was sufficient for all the purposes designed by the Legislature.
It is not fair to presume, from the insertion in the supplemental act, that the expiration of the twenty-five years “ should not impair the-grantee’s rights, ” that he questioned the existence or the validity of his franchise; because, when the bill was presented by him in November, 1865, sometime after the expiration of the limitation, he was in the full possession and enjoyment of his canal, collecting freely, and generally without any disputation, tolls or tonnage duties from all vessels making use of it.
Entertaining, as we do, no doubt of the correctness of our interpreta- '' tion of the act we have been considering, we do not deem it necessary to . inquire why, in the supplemental act, the grantee inserted the clause that his rights should not be impaired by the expiration of the time for which, the monoply was limited.
The doctrine of the defendant, as to the legal effect of the expiration of a limitation to a license or grant, illustrated by the case cited from 6 Hill, 271, is correct in principle; but it has no application to a case like this one, where no express limitation attaches, except as to the enjoyment of the exclusive privilege or monopoly.
The plaintiff maintains that the grant is not revoked, or at all events is one that cannot be revoked without remuneration to the grantee of the. expenditure incurred by him, and he cites numerous authorities in support of .that position. See 11 N. H. R. 102; 17 S. and R. 383; 7 N. H. R. 237; 7 Benj.; 7 Tenn. 373; 1 Greenl. 117; 5 Greenl. 9; 15 Viner’s (abridg. ed.) License, p. 94
But this question does not properly arise in this case now, as up to the time at which the defendant’s debt was contracted, neither by the original nor any supplemental or posterior legislation had the State of Alabama manifested any intention to revoke the grant, or any opposition whatever to the rights under it, claimed and enjoyed by the plaintiff.
It has always permitted the grantee to hold and occupy the canal and its adjuncts, and seems wholly unconscious of any usurpation by the, plaintiff of its exclusive right or title to the property. The works constructed by the plaintiff have become so necessary, nay, indispensable to inland navigation, that it may be reasonably supposed, if the State deemed the grant extinct by the expiration of the limited term, some legislative provision would have been made in respect to its permanent occupation, and the keeping in good order and repair, the canal and the' buildings, etc., attached to it.
The defendant has not been deprived of any right of navigation, indeed the act prohibited the grantee from interfering with any existing channel. These channels still remain in their original condition, and if the defendant desired to employ them it was competent for him to do so;but he could not in justice make use of the capital, labor and care of the plaintiff for his own benefit, without paying to him a legal equivalent. -
*334 It is needless to allude to tlie occupation of the canal by the Federal authorities prior to the 23d October, 1865, as the plaintiff was on that day, by order of the President of the United States, reinstated in the full possession thereof.
From the testimony in the lecord, it appears the Oreóle’s passage through the canal only commenced in November, 1865, whilst the canal was in the plaintiff’s possession, and they terminated inMarch, 1866. She made forty-one trips through, and this, at the rate of fifteen cents per ton, on 393 tons, makes a total of (wo thousand four hundred and sixteen dollars and ninety-five cents.
The charge of fifty per cent., as damages for non-payment within the legal delay of this amount, cannot be allowed in this proceeding, as from the act of the Legislature of Alabama, as it is extant upon the transcript of the record, no specified amount is fixed as damages for the failure of a boat or vessel, to pay tolls or tonnage duty within the stated delay.
The amount for which judgment was rendered in the lower court for the plaintiff, must be reduced.
-It is therefore ordered, adjudged and decreed that the plaintiff, John Grant, have judgment against, and recover from the defendant, Joseph Leach, the sum of two thousand four hundred and sixteen dollars and ninety-five cents, with legal interest from judicial demand, 5th April, 1866, and the costs of suit in the District Court; and it is further decreed that for the amount claimed as damages, there be judgment in favor of the defendant and against the plaintiff, as in ease of nonsuit.
And it is further ordered, that so far as the judgment appealed from conflicts with the decree now rendered by this Court, that it be annulled, avoided and reversed, otherwise affirmed, the costs of appeal to be paid by the plaintiff and appellee.,