Haywood, J.
Henry Bradford applied to the Circuit Court for the county of Knox for a mandamus to the Treasurer of East Tennessee to compel him to issue to the said Henry, as the assignee of a purchaser, mentioned in the Act of 1823, ch. 118, a certificate, such as is mentioned* in the said Act, which, being refused by the Circuit Court, he applied to this Court.
The title of the Act is for the relief of Hoard and others, purchasers or assignees of purchasers, at the Hiwassee sales.
The preamble says: “ Whereas John Hildebrand, Tolbtuskee, and Colonuskee instituted suits in the Circuit Court of Knox County against the persons for whose relief this Act is intended, claiming certain lands which had been purchased by Hoard and others, at the Hiwassee land sales, as reservations under the late treaties between the Cherokee tribe of Indians and the United States; and whereas said purchasers are desirous of accommodating said suits by compromise ;
“Be it enacted, That Samuel Mc’Connel.be appointed to make said compromise, in behalf of said purchasers, provided that said compromise shall not be made on such terms as shall prevent the State from receiving at *342 least two dollars per acre for the land.” Certain commissioners were appointed to examine and consider the compromise, should it be effected, and deemed equitable between the State and the individuals concerned,.then the commissioners to seal and sign it, and then it was to be binding, as well upon the State as said purchasers, or their assignees.
And if said commissioner shall fail to make the compromise, and the failure should be certified to the Treasurer of East Tennessee, the latter to issue to such purchasers, or either of them, a certificate for as much land as the amount of money he or they have paid into the treasury, on the original purchase, at the rate of fifty cents per acre, and the surveyor of the Hiwassee District to survey and lay off the same, &c., but they are not to select any islands, nor land on which any person may be settled, without the consent of such settler, and the lands to be surveyed according to the original section lines.
The lands in question had been reserved to the above-named Cherokees, by the Treaties of 1817 and of 1819 ; had been included in the act after-wards passed for selling lands in the District of Hiwassee, for which the Indians, who, aliened under the treaty, had sued, in the Circuit Court of Mc’Minn County, and their suits had been removed, by a change of venue, to the Circuit Court of Knox County, held at Knoxville, and are yet undetermined. Mc’Connel made a return to the treasurer, that he had endeavored to effect a compromise, and had failed; whereupon Bradford applied for the certificate, which the treasurer refused. In the petition for the mandamus, Bradford avers that he is an assignee of a purchaser; and on the motion to show cause why the mandamus should not issue, the fact does not appear to be controverted.
The questions made for the opinion of the Court are : —
First, Whether an assignee be entitled as well as a purchaser.
Secondly, Whether Bradford is such an assignee.
Thirdly, Whether the persons intended in the Act must be purchasers, Sued in an action commenced in the Circuit Court of Knox County, or whether, if a suit be pending in that Court, it will do as well.
Fourthly, Whether the certificate be sufficient which Mc’Connel made to the treasurer.
Fifthly, Whether a mandamus be the proper remedy.
In order to form a correct opinion, certain facts should he premised. The Assembly knew of these treaties, when they passed an act for selling the lands, and that these reservations had been laid off; the purchasers knew of them likewise, as well as of the act of Assembly. The reservations were of six hundred and forty acres of land, to each Indian provided for; and by the act of Assembly a part of the purchase-money was to be advanced at the time of the purchase. These reservations were purchased at high' prices, — not less than ten dollars per acre, and in some *343 instances much higher. By the Act for selling the lands in Hiwassee of 1823, they are to he sold, for the first six months, at one dollar fifty cents per acre; and in the next three months, at one dollar per acre; in the next three months, at fifty cents per acre ; in the next three months, at twenty-five cents per acre ; and afterwards, at twelve and a half cents per acre.
The Legislature was culpable in offering the lands in question for sale, because the purchasers must be involved in difficulty. This act shows that such was the sentiment of the last Assembly. In another part of it the purchasers are indemnified against the costs of the actions and against all damages they may sustain on account of the same. What is the suggestion of natural justice? We have got the money of these people, — it is in our treasury; our other lands we are putting into the market at this very time; and if we do not now give them the use of this money, they must lose the advantage of realizing it, in case judgment should be against them, as it probably will; for at the time these suits shall end, none but refuse lands will remain to be sold. Let us give them the use of their money in the mean time, and let them have lands, not occupied by others, at a medium price, — neither the highest nor the lowest, — and let the moneys which they have advanced be appropriated to pay for these lands, in case the Indian plaintiffs recover; but, if otherwise, then let the lands which they select under this Act be paid for in three months, or the lands be forfeited. In case they lose the Indian reservations, they will have other lands to the amount of their money; if they save them, then they pay for the reservations, and for those other lands, or lose the latter. They are put to much trouble and expense in defending themselves, which the State ought to compensate them for; and as an equivalent or indemnification, we will let them, at a medium price, purchase a part of the lands, which shall be first offered for sale under the Act of the present session. In all this I cannot perceive the least injustice to the public, and no greater advantages conceded to the purchasers than the Assembly should have given. This is a reason why the Act should be liberally construed, to secure to those whom it intended to relieve the benefits justly designed for them by the Legislature.
Upon the cause shown by the treasurer against the mandamus, the defects of the petition are removed, and we have, from both instruments, the petition and the answer, — the full information that is wanted. The petition alleges that Bradford is the assignee of a purchaser; the answer shows of what purchaser, and by what means he claims to be an assignee. He shows the Act annexed to the answer, and the certificate of Mc’Connel, and also the record of a suit depending in Knox County, originally instituted in the county of Mc’Minn, by the persons named in the Act as plaintiffs. A land certificate issued to Lowry, on the 11th of November, 1820, and another to him, on the 22d of November, 1820, for *344 lands described in them, of which he was the purchaser at the Hiwassee land sales, and an assignment of them to Bradford is set forth ; also, the affidavit of the surveyor, stating that the reservations for Colonuskee, of six hundred and forty acres, had been surveyed, and includes the same land; and it stated also the application of Bradford for a certificate, under the Act of 1823, cb. 118 ; and that he, the treasurer, refused to issue the same to him; and he refused, it is stated, because Bradford is not named in the Act of 1823, ch. 118; because no suit was instituted in Knox County by the Indians named in the Act; because Bradford is not the purchaser nor the assignee of .lands purchased, for which a suit was instituted in Knox County; because the lands for which certificates are to issue were lands purchased by Stanwix Hoard, and he was not a purchaser of any lands at the Hiwassee land sales, nor has any suit been instituted against him; because the certificate of Mc’Connel does not show that he offered to compromise; because the suit commenced against Bradford in Mc’Minn County does not appear to be for lands claimed as a reservation by Colo-nuskee, and that Mc’Connel was a purchaser, and was sued by a suit in Mc’Minn, which was removed to Knoxville, though that suit does not appear in the act of Assembly.
First, is an assignee entitled as well as a purchaser ? In the view of justice he is; he has purchased the place which the other occupied, and stands in it, and is as much entitled to the use of his money deposited in the treasury, as the purchaser was; and what good will it do to say otherwise ? May he not use the name of the purchaser, and obtain in that way, the same end which he now aims at ? In the title of this Act the assignee is one who is intended to be relieved; and in the preamble suits have been instituted against those who are intended to be relieved by this Act. In the return, Stanwix Hoard is stated not to have been a purchaser at the Hiwassee land sales; the inference then is, that he was the assignee of a purchaser, for the title or act itself extends to no others ; and if he was not a purchaser he must have been an assignee. But whether this be correct or not, the persons intended to be relieved, were those mentioned in the title, assignees and purchasers. The purchaser from him who purchased the lands is the purchaser of these lands. The compromise when sealed and signed by the commissioners is to be binding on the assignees. For thus agreeing to be bound, it is to be presumed that some equivalent was to be given. Liberty from the Assembly to give for the compromise the surplus, or a part of it, above the two dollars, is no benefit if the lands really belong to the Indians, for then the surplus does not belong to the State, and the compromise supposes that the lands do belong to the Indians; the assignees then have no equivalent for that part of the bargain which is burdensome to them, unless in case of failure to compromise they have a right to the certificate. In construing contracts we *345 must embrace the rational conclusion rather than that which is inequitable and unjust. That this is the true construction would he placed beyond doubt, if the assignees be excluded from the certificate, and eventually the Indians recover; for then the Legislature must refund the money already paid, in money, and not in lands, and in money must compensate them for their trouble, abstractions from their proper callings, their travelling expenses, fees to lawyers, moneys expended to pay witnesses and the officers of the Court. And is it not better at once to let them have lands at moderate rates, to go in discharge of the expenses already incurred, or which may in future be incurred ?
The question now presents itself, whether Bradford be an assignee. The certificate of the purchase issued by the treasurer is in the possession of Bradford, assigned to him by an indorsement, and the authority is not questioned by the treasurer, either of the certificate or of the assignment; on the contrary, he says expressly that said certificates are regularly assigned to said Henry.
Is Bradford one of those who are described in the Act as sued by an action in the names of the Indians mentioned in the Act, in an action instituted in the Circuit Court of Knox County? As to the justice intended to be administered by the Legislature, it is perfectly immaterial whether the action began in Knox County or was already depending there, after having been commenced elsewhere; when it was removed to the Circuit Court of Knox County, and placed on the records of that Court, it was then for the first time there instituted; nor is it any objection, that the person appointed to make the compromise was one of the persons sued. Is it probable that the Assembly passed this law without looking at the record, and without knowing the situation of Mc’Connel? Would he not make the compromise if he could, for any price that the lands were worth above two dollars per aere ? Had he given the whole or a part of the surplus, the Legislature were willing, so as two dollars were saved for the State. The only fear they had was of some condition, unfavorable to the interest of the State, which the commissioners were to prevent. Suppose another instead of Mc’Connel, and he had compounded for a part of the surplus above two dollars, would it not be a matter of indifference to Mc’Connel, whether it were for that sum or a lesser or a greater sum ? Would he not have to pay what was saved to the Indian or the State ? And, indeed, he would be more interested on the side of the • State, if anything, than of the Indian ; he could petition the State for suspension or remission, but not so of the Indian ; there is no uncertainty of the lands for which he is sued ; he is the assignee of two certificates for land, covered by the reservation, and he is sued for the lands in these certificates. As to the uncertainty of the endeavors which Mc’Connel used to make the compromise, it is immaterial to be known what they were. The compromise was to be effected, not for *346 the benefit of the State, but for that of the purchasers and assignees, and if they did not choose to do what was for their benefit, it was nothing to the State. If no compromise were made, the State was benefited by the terms of relief given by this Act, for it was better to pay in lands for the money paid into the treasury than to refund it in case of a recovery by the plaintiffs ; and in case of a failure in them to recover, then it was better for the State to receive the whole purchase-money from the Hiwassee purchasers than to have lost the surplus above two dollars, or part of it, by the compromise. This objection seems to me to be without weight. It is argued that the action instituted in Knox Circuit Court, of which the Act speaks, is another suit than that upon which Bradford proceeds. Of that which does not appear, we will make the same estimate as of that which does not exist. And besides this maxim of law, it is contained in this bill of exceptions, that there was no cause in this Court of Knox County, between these parties, but the one on which Bradford proceeds, and these are the very causes which the Act describes. Should the defendants in these actions get lands, by means of their certificates, two hundred per cent cheaper than others can buy the same lands, the Legislature was competent to give them this advantage; and it is impossible to believe that they did not intend it; for they must have seen the consequence as we now see it; it could not have been unperceived by them, and if not, they must have intended them as some compensation for the difficulties into which the purchasers had been led by the incautiousness of the Legislature itself. And if they may, under the provisions of this Act, purchase lands cleared but not settled, for fifty cents per acre, so may others, at the same time, for a higher price; and what is it to those who cleared the lands, whether these persons get, theirs for fifty cents, or others for one dollar and fifty cents; the State is the only loser, and that loss she voluntarily assumes, very probably upon just' and honorable motives. It is not for this Court to shorten her justice, or retrench her generosity.
As to the question whether the mandamus be a proper remedy, it is a rule of the common law, that if the party be entitled to what he asks, and there be no other remedy, or not one sufficiently efficacious, he shall have redress by this writ.
I am of opinion that the mandamus ought to issue.
Whyte, J.
For the statement see the preceding opinion. The only question necessary in my opinion, to be decided in this case, for the cause rests upon it, is, whether Matthew Nelson, the Treasurer of East Tennessee, ought to have issued to Henry Bradford, the plaintiff in error, a certificate for as much land as the amount of money paid into the treasury by William Lowry, the original purchaser, at the Hiwassee sales, at fifty cents per acre would come to, the said Henry Bradford being the assignee of the *347 said'William Lowry. It is agreed on the argument, that this question depends entirely on the act of Assembly, 1823, ch. 118 ; the caption of this Act is in these words: “An Act for the relief of Stanwix Hoard and others, purchasers or assignees of purchasers, at the Hiwassee land sales.” The preamble states that: “ Whereas John Hildebrand, Tolotuskee, and Col-onuskee instituted suits in the Circuit Court of Knox County, against persons for whose relief this Act is intended, claiming certain lands which had been purchased by said Hoard and others, at the Hiwassee land sales, as reservations under the late treaties between the Cherokee tribe of Indians and the United States; and whereas, said purchasers are desirous of accommodating said suits by compromise.” Section first enacts, “ That Samuel Mc’Connel be appointed to make said compromise in behalf of said purchasers; provided always, that said compromise shall not be made on such terms as shall prevent the State from receiving at least two dollars per acre for the land; and provided, also, that she shall not be bound to refund any money that has heretofore been paid into the treasury of the State.” Section second enacts, “ That John Williams, Matthew Nelson, and William C. Mynatt, be, and the same are, hereby appointed commissioners in behalf of the State, to examine and consider said compromise, if the same shall be effected, and if said compromise should be by them deemed just and equitable between the State and the individuals concerned, the said commissioners are hereby required to sign and seal said agreement of compromise, which shall be binding as well upon the State as said purchasers or their assignees.” Section third enacts, “ That if said commissioner should fail to make such compromise, on failure being certified by him to the Treasurer of East Tennessee, it shall be the duty of said treasurer, and he is hereby required to issue to such purchasers or either of them, a certificate for so much land ps the amount of money he or they have paid into the treasury on the original ..purchase, at fifty cents per acre, and the surveyor of the Hiwassee district is hereby required to survey and lay off the same to him or them, &c.” These are the sections of this Act cited on the argument, and principally relied upon as applicable to this case.
The Act says: “It shall be the duty of said treasurer, and he is hereby required to issue to such purchasers, or either of them, a certificate for as much land as the amount of money he or they have paid into the treasury on the original purchase, at fifty cents per acre.” Upon reading this sectian there seems to be no doubt as to its meaning ; the expression is plain, clear, and unambiguous, that the certificate is to be issued to the purchaser. But it is contended that the assignee of, or the sub-purchaser from, the original purchaser is also meant; and for this purpose the caption or title, and the last clause of the second section are cited to show it; these, upon examination, it is believed, will not bear out the position áo taken; the caption or title, which is no part of the Act, ought not to be regarded *348 in construing it, but taking it otherwise for the present, and in this instance, we will see if it declares the scope or general object of the Legislature in passing the Act. This is for the relief of Hoard and others, purchasers, and the assignees of purchasers, at the Hiwassee land sales; the particular mode of this relief and its specification is afterwards detailed in the enacting clauses ; sections first and second delineate the mode to be pursued; and section third specifies the relief to be given, to wit: by issuing a certificate to the purchaser for as much land as the amount of the money he has paid into the treasury on the original purchase will come to, at fifty cents per acre. But it is said, to relieve the assignee, a certificate must issue to him also. By no means; has he not relief given through the assignor or purchaser at the sales, by the certificate being given to him, the purchaser; the certificate confers the title to the lands, at the price of fifty cents per acre, and the quantity of acres is measured by the quantum of money originally paid into the treasury, and according to the contract of the assignee or sub-purchaser, with his assignor, the original at the Hiwas-see land sales, is his portion of these lands. The issuing of the certificate to the purchaser complies with the letter of the caption of the Act, and I will show presently that it also complies with its spirit; the enacting part, therefore, so far from being inconsistent with the reason held out by the caption, is in perfect accordance with it, and the error of the argument lies in giving to that view an unreasonable, an inconvenient and impracticable extent not warranted by the intention of the Legislature, as expressed afterwards, in conferring the relief. The clause in the latter end of the second section, where purchasers and assignees are mentioned, relates not to the relief to be administered to them, but imposes a term on them, a consequence of the relief, which is, that the compromise with Hildebrand, Tolotuskee, and Colonuskee, a previous step to the obtaining of the relief, shall he binding, as well upon the State, as said purchasers or their assignees.
Another view of this Act will also clearly show that the right of the plaintiff in error has no foundation for his demand. Who is the Legislature dealing with in this Act ? Who, in its different enactments, are the actors ? The purchasers, and the purchasers only. The preamble states the purchasers are desirous of accommodating their suits by compromise, not their assignees. In the first section, Samuel Me’Connel is appointed to make said compromise on behalf of the purchasers, assignee not noticed. In the third section the certificate is to be issued to the purchasers, not to the assignees. The fourth section provides, if the suits are terminated in favor of the purchasers, then it shall be the duty of the purchaser, &c., not of the assignee. The fifth section provides if said purchasers lose their suits, then the money heretofore paid by said purchasers shall be applied to the payment of the purchase-money of the lands directed *349 above to be surveyed; and they shall receive a grant or grants for the same. Who ? The purchasers, not the assignees, shall receive the grant. And, lastly, by section sixth, the purchasers of said lands not to be required to make any further payments, ¡fee.
Thus, through the whole Act, the dealing is with the purchaser, and he is an active agent; on the other hand, the assignee is nowhere mentioned in the Act but in one place, that is, the second section, and there he is not an active, hut a passive agent, having a term imposed upon him, as a consequence of the relief he may receive through and under the purchaser. It is unnecessary to mention that the term “ purchasers,” anywhere in this Act, means the original purchasers at the Hiwassee sales.
It cannot be supposed that the Legislature could mean the certificate should be issued by the treasurer to the assignee, for several reasons ; it would be inconvenient in the execution, if not altogether impracticable ; it is easy for the treasurer to ascertain the purchaser; he has him upon record, in the sales of the Hiwassee lands, and there is no room for mistake; but the assignee, how does the treasurer ascertain him ? Not by the evidence of a record, but by act in pais, by proof of the assignment. How is he to know what the Legislature will deem sufficient ? No test is prescribed to him for that purpose, and this is a strong circumstance to show they intended him no dealing with the .assignee; the assignment may be a forgery; and shall that which is sometimes difficult to be attained by a court and jury be imposed, by construction, upon an individual officer ? Certainly not. Suppose, then, another claiming by assignment the whole interest of the purchase, how is the treasurer to discover the genuine assignee, or, if both are genuine, who has the priority, or the best right ? Suppose the interest of the purchaser is subdivided amongst several assignees, the more difficulties in proportion; a statute shall not be construed in such a manner as to be inconvenient, and against reason. Ba. Ab. title, statute 1, 10.
Upon this view, I think, if the Legislature were asked, did they intend their treasurer to issue other certificates under this Act to the assignee of the purchaser at the Hiwassee sales, they would answer no. But this rule, though it is to be found in the books, and a good rule formerly, is not to be acted upon at the present day.
The rule is laid down in Plowden, who reported in the time of Queen Elizabeth, above two centuries ago; and a construction that would be proper upon a statute made before that time might be very improper upon one made in 1823. I cannot better illustrate this than in the language of Mr. Justice Buller, in giving his judgment in the case of Bradley v. Clark, in 5 Term. 201, 202. I shall, therefore, for this purpose, cite his words: “ With regard,” says he, “ to the construction of statutes according to the intention of the Legislature, we must remember there is an essen *350 tial difference between the expounding of modern and ancient acts of parliament. In early times, the Legislature used, and it was a wise course to take, to pass laws in general, and in few terms ; they were left to the courts of law to be construed, so as to reach all the cases within the mischief to be remedied; but in modern times great care has been taken to mention the particular cases in the contemplation of the Legislature, and therefore the courts are not permitted to take the same liberty in construing them as they did in expounding the ancient statutes.” This very respectable opinion of Justice Buller is corroborated and sanctioned by a still more recent opinion, and of much higher authority, — that of the Supreme Court of the United States, in the case of Sturges v. Crown-inshield, 4 Wheat. 202, 203, as delivered by Mr. Chief Justice: “ Although,” says he, “ the spirit of an instrument, especially of a constitution, is to be respected not less than its letter, yet the spirit is to be collected chiefly from its words. It would be dangerous in the extreme to infer from extrinsic circumstances that a case for which the words of an instrument expressly provide shall be exempted from its operation. Where words conflict with each other, where the different clauses of an instrument bear upon each other, and would be inconsistent, unless the natural and common import of the words be varied, construction becomes necessary, and a departure from the obvious meaning of words is justifiable; but if, in any case, the plain meaning of a provision, not contradicted by any other provision in the same instrument, is to be disregarded, because we believe the framers of that instrument could not intend what they say, it must be one in which the absurdity and injustice of applying the provision to the case would be so monstrous that all mankind would, without hesitation, unite in rejecting the application.”
Now, what is the plain provision in this ? It is that the treasurer shall issue the certificate to the purchaser. It is as plain and direct as language can express it, and it is not contradicted by any other provision in the Act, but, on the contrary, every previous clause in the Act is preparatory to and naturally leading to this provision of the certificate’s issuing to the purchaser; and every subsequent clause of the Act is corroborative of this provision, and flows from it as a necessary consequence of its existence. Thus, the next, or fourth section is predicated upon the certificate’s being issued to the purchaser, for it says: “ If the said suits be determined in favor of the purchasers, then the purchaser shall, in' three months, pay into the treasury of East Tennessee, the whole amount of the purchase-money for said land, to be laid off to him under the provisions of this Act.” This is as express a recognition that the certificate is to issue to the purchaser as possibly can be made. The following or fifth section is also predicated on the certificate’s issuing to the purchaser, and an equally strong recognition of its having so issued. It provides for *351 the cases where the purchaser loses the land, and directs that the money heretofore paid by the purchaser, shall he applied to the payment of the land above directed to be surveyed and laid off for him, for which he shall receive a grant; and the last or sixth section is an equally clear recognition to the same effect as all the preceding.
What room, I may be permitted to ask, after this continued chain of irrefragable proofs, is there left to believe that the Legislature, the framers of this Act, could not intend what they say, to wit, that their treasurer is to issue the certificate to the purchaser, and thereby negativing it of necessity to the assignee ? I can see no room left.
I am of opinion, therefore, that the judgment of the Circuit Court, refusing the mandamus to the plaintiff in error, is correct, and ought to be affirmed.
Peck, J.
[See Judge Haywood’s opinion for a statement of this case.]
Of the question presented by this record, I shall consider, first, was the assignee intended to be provided for by the third section of the Act out of which this question has arisen ? And, second, if intended to be provided for, has the Act been pursued according to its spirit, so as to insure the relief sought by this application ?
Taking the Whole Act into view, it may, perhaps, be inferred that the assignee was intended to be embraced; in that portion of the Act which precedes the third section, the assignee being named, and he standing in the place of the purchaser, is so far within the letter; and in the third section, he may come within the equity of the Act, though not named. So that, was there nothing else in the way, I should at present incline to the opinion that the relief might be afforded.
On the second question raised, has the Act been pursued according to its spirit ?
Mc’Connel is the agent for the State ; the Act in question is his letter of attorney; he has to make a treaty of compromise, and in that treaty is limited, — nay, so cautious has the Legislature been in the provision touching the treaty to be made, that commissioners are appointed to overlook and approve the treaty or compromise, should one be made. It is clear, then; that the whole subject was not left to Mc’Connel alone, on the first member of the Act.
If, then, the State was guarded with respect to the compromise that might be'made, what ought to have been shown by the applicant, when he brings his suit against the treasurer, on the second member of the Act in question ?
Can it be possible that the Legislature contemplated that the person to whom they confided this trust, should stand with his arms folded, and by making a mere negative statement, “ that no compromise could be made,” *352 that the treasurer, in whom confidence was also placed, would grant the certificates, regardless of substance in the thing certified ? The treasurer would think there was a confidence reposed in him, as well as in Mc’Con-nel, the commissioner. There was something for him to know and of which he was to judge. And he had a right to expect, and was hound to see, that there was sufficient weight in the evidence offered, to make some preponderance in favor of the applicant, for without that he could not know that Mc’Connel had acted under his authority.
Now this conclusion must be obvious, when we examine the first section of the Act, “That Samuel Mc’Connel be appointed to make .said compromise in behalf of said purchasers. Provided always,- that said compromise shall not be made on such terms as shall prevent the State from receiving at least two dollars per acre for the land; and provided also, that she shall not be bound to refund any money that has heretofore been paid into the treasury.”
Now, as the purchaser had become such, with a full knowledge of all circumstances attending the title, and as the assignee, also, must have known what he was getting, all they, or either of them, had a right to ask, was an indemnity against 'the trouble of the suit, for it could not be anticipated how it would terminate. They had purchased the land at their own risk, and were content to take it at the price they were bound to pay. But the State was willing to lose something, between two dollars per acre and the sum bid at the sale, which it was expected would go into the hands of the plaintiff in ejectment, to quiet the suit.
Then what sum, I would ask, of this money, which the purchaser owed the State, and which the State was willing to lose, has been offered by Mc’Connel, if any ever was ?
Something should have been done, before he ought to have made the certificate, and that something shown, either in the certificate or in evidence; these are wanting; and from the silence of the commissioner, Mc’Connel, on this point, it may very fairly be contended that nothing ever was done under the first two sections of the Act, and the third could only have operation in case of failure on the first and second. If this was not the fact, why did not the Legislature give the certificates in the first instance ?
Then the whole question rests, as if Mc’Connel had never taken upon himself this duty.
As to the question, which would most advantage the State, a treaty of compromise, or grant of the certificates without such compromise, I shall say nothing, they being mere matters of calculation, with which we have nothing to do.
I determine the cause upon the ground, that enough has not been shown to give the applicant the relief insisted on. This point being urged by the treasurer in his answer, is by me held sufficient to rest the case as I *353 found it, in his hands, for I cannot say he has erred in refusing a grant of the certificates.
On a subsequent day of the terra Judge Whyte, having left the court, a motion was made by the counsel of the applicant for a reconsideration of the subject; an affidavit of Mc’Connel, the Commissioner, was then read, showing that propositions had been made to the persons mentioned in the Act, and that he would have given as much as the difference between two dollars and the sum bid at the sales for a compromise, but that all propositions had been rejected. The affidavit cannot be received to have any weight in this Court, the question resting on the record presented by the writ of error; but, I may say, if it could be received it is wholly insufficient; not showing that any application to compromise had been made before the petition for the mandamus was presented; for aught that appears in the affidavit, the propositions mentioned therein may have been made the day before the affidavit was presented.
The opinion before delivered was founded alone upon the Act of 1823, ch. 118; but my attention being called by the attorney for the applicant, to the Act of 1819, ch. 59, to prove that the assignee stood in the place of the purchaser, and in contemplation of the Legislature, not distinguishable from him, section fourth of that Act points out the mode of selling, what shall be paid down, how evidence of the balance of the debt shall be preserved, in all which it speaks of the purchaser alone, and in the conclusion provides, that if the money should be paid, the purchaser, or his assignee, or legal representative, shall be entitled to a grant, &c. The eighth section provides for the payment of interest on the instalments as they become due; and throughout, the purchaser only is spoken of; in the proviso to this section the money due is made a lien upon the land; but the marked difference between the purchaser and the assignee is exhibited in the eleventh section, “ that in case of failure to pay the interest at the time specified, 'process shall issue against the defaulter, directed to the sheriff of the county, by which said sheriff shall seize of the personal estate of such defaulter, and make the amount, &c.
The term “ defaulter,” as used in this section, must mean the purchaser, for two reasons; first, the liability of the assignee is not mentioned in the Act; second, there is no privity between him and the State, and the treasurer could never know who he was, he having no record of the assignment.
Then, as the purchaser is liable in his goods and chattels for the interest on the instalments as they may fall due, and as execution may issue to enforce the collection, and this for a reason visible throughout our law, the favor shown to the realty, and because the'treasurer could know the purchaser, but not the assignee, and as the purchaser may bind himself to indemnify the assignee, it follows pretty conclusively, that there was a dis tinction intended between the purchaser and the assignee, and that the State *354 in passing the law under consideration intended the favor to him with whom she had made her contract.
fS’In this view of the subject the argument gains much strength from the-section of the Act of 1823, which suspends the collection until the suit be ended.
This section had its origin in the consideration that the purchaser might be bound to the assignee, and could be enjoined from collection of his money from the assignee, should he have sold upon a credit, because of the encumbrance on the land, created by these suits ; and the reason is most strong for this supposition, when we consider that the purchaser could not expect the State to refund, he having purchased with a knowledge of the title he was getting.
For these reasons it is pretty evident to my mind, construing the two acts together, and viewing the relative situation of purchaser and assignee, that the favor intended was for the benefit of the purchaser, and that in giving it to the assignee we might hastily bestow an equity upon the wrong person; the purchaser being exposed to the greatest and perhaps only danger, except where the land was proceeded against on the lien, was the reason why the purchaser should have land at fifty cents per acre, when all others were compelled to pay one dollar and fifty cents.
Suppose the assignee gets the certificates, and then, on a trial of the ejectment, loses the lancl, the assignee never can be reached for the money or interest due the State; he will not be liable to the purchaser for the money he was to give for the assignment, because the land is lost to him ; but the purchaser, though it would be unjust in the State to exact it, is liable to an execution from time to time, by the Act of 1819, sec. 11, for the interest of the money.
The assignee then would get all, and the purchaser, who is thus exposed, lose all, while he is the very person named in the third section, and in privity of contract with the State.